**IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CHAD HOGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.  2:05-cv-687-WKW** |
| | ) | |
| | ) | |
| **CITY OF MONTGOMERY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEFENDANTS, CITY OF MONTGOMERY, A.D. BAYLOR AND J.C. WEST,**

Defendants, City of Montgomery, A.D. Baylor and J.C. West, adopt and incorporate the

Motion for Summary Judgment with supporting evidentiary submissions and Memorandum of Law

submitted by Defendants W.W. Caulfield, J.M. Gordon and Ronald Cook.  Additionally, Defendants

City of Montgomery, Baylor and West submit the following Memorandum of Law in support of their

Motion for Summary Judgment, and state unto the Court the following:

**I.
SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the 'pleadings,

depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of genuine issue of material fact.'" *Id.* at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the non-moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file 'designate' specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. Similarly, the moving party is entitled to summary judgment if the non-moving party has failed to prove the elements of her case or there is the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. *Fitzpatrick v. City of Atlanta,* 2 F. 3d 1112, 1115-16 (11th Cir. 1993).

Additionally, conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. *Fed.Rules Civ.Proc.* Rule 56 (c).

## II.

### PROCEDURAL BACKGROUND

This lawsuit was filed on July 7, 2005 and arises from an incident that began late on March 30, 2005 and ended in the early morning hours of March 31, 2005. Plaintiff Chad Hogan ("Hogan") named as Defendants the City of Montgomery ("the City") and Police Chief A. D. Baylor ("Baylor"), Major J. C. West ("West") former commander of the Detective Division, Lt. W.W. Caulfield ("Caulfield"), Lt. Ronald Cook ("Cook") and police officer J.M. Gordon ("Gordon"), in their individual capacities. Anthony Arnaud ("Arnaud"), former owner of Arnaud's Quality Meats, was also named as a Defendant.

The Complaint contains six counts. Count I is a claim pursuant to 42 U.S.C. § 1983 for False Arrest/False Imprisonment. Count II is a claim pursuant to 42 U.S.C. § 1983 for Abuse of Process, or in the alternative, Malicious Prosecution. Count III is a claim for Common Law Malicious Prosecution, or in the alternative, Abuse of Process. Count IV alleges a claim pursuant to 42 U.S.C. § 1985 Conspiracy. Count V alleges a claim pursuant to 42 U.S.C. § 1986 for Failure/Refusal to Prevent Violations. Count VI is a claim for Municipal Liability.

Defendants filed an Answer on August 25, 2005 with affirmative defenses. The trial is set for November 6, 2006.

### III.

#### NARRATIVE STATEMENT OF FACTS

On March 30, 2005, Plaintiff Chad Hogan got home from work around 10:30. (*DX 1, Hogan Depo. p. 30*) Hogan got a phone call from Chris McBride ("McBride"). McBride asked Hogan if he wanted to go shoot pool. (*DX 1, Hogan Depo. pp. 29, 30*). Hogan left his home on Karen Valley in East Montgomery and drove downtown to Jackson Street and left his car in front of someone's house. (*DX 1, Hogan Depo. pp. 30, 31, 111*). Hogan got into a Lincoln Town Car driven by

"Mario" with McBride and Courtney Smith to go shoot pool at the Break Room on the Eastern Boulevard. (*DX 1, Hogan Depo. pp. 31, 111, 112*). The Break Room is on the same service road as Arnaud's Meats on the Eastern Boulevard. (*DX 1, Hogan Depo. p. 111*). They parked in front of the Break Room. (*DX 1, Hogan Depo. p. 112*).

They shot pool for about an hour. (*DX 1, Hogan Depo. pp. 31, 112*). They were going to leave but when they pulled out of the parking lot it was raining heavily. (*DX 1, Hogan Depo. pp. 31, 112*). Mario went a short distance down a service road, and pulled in to a nearby parking lot, and parked beside Arnaud's Meats. (*DX 1, Hogan Depo. p. 112*).

Mario pulled out a sack of weed and started rolling it. (*DX 1, Hogan Depo p. 32*). All of them were drinking. (*DX 1, Hogan Depo. p. 32*). The other three were smoking weed and Hogan was drinking vodka while they were waiting for the rain to slack (*DX 1, Hogan Depo. pp. 32, 72*). They parked about forty yards away from Arnaud's Meats. (*DX 1, Hogan Depo. p. 39*).

Montgomery Police Department received a call regarding a burglary at Arnaud's Quality Meats. The call for Arnaud's located at 425 N. Eastern Blvd came in as a general burglary at approximately 23:57:51. (*DX 2, Stuart Affidavit*). Patrol unit #306 and K-9 unit #150 were dispatched to the call at 23:58:12 and 23:58:47. (*DX 2, Stuart Affidavit*). Officer Gordon was the first to arrive in K-9 unit #150 at 00:06:24. (*DX 2, Stuart Affidavit*).

When Officer Gordon arrived in the parking lot of Arnaud's Meats, he observed a vehicle parked in the parking lot and an unknown subject run back to the vehicle and get in the back passenger seat. (*DX 3, Gordon Depo. pp. 24, 30). ).* The vehicle drove off away from the parking lot, toward the trailer park. (*DX 1, Hogan Depo. p. 33 and DX 3, Gordon Depo. p. 24*).

Gordon pulled into the trailer park behind them. Mario recognized the vehicle as police.

(*DX 1, Hogan Depo. pp. 33, 39*).   Mario then drove inside a trailer park, with all passengers (including Hogan) in the car. (*DX 1, Hogan Depo. p. 33*). Gordon attempted to stop the car.  *(DX 3, Gordon Depo. p. 30).*  The vehicle fled.  *(DX 3, Gordon Depo. p. 33).*   Gordon followed the vehicle into the trailer park.  *(DX 3, Gordon Depo. pp.  35, 36).* Mario was steady driving when Gordon pulled behind them. (*DX 1, Hogan Depo. p. 33*).

In the back of the trailer park, Gordon hit his emergency flasher lights.  (*DX 1, Hogan Depo. p. 33 and DX 3, Gordon Depo. p. 34).*  The vehicle pulled over and stopped.  *(DX 3, Gordon Depo. p. 34).*  Gordon got out and was approaching the vehicle when the vehicle fled again.  *(DX 3, Gordon Depo. p. 36).*  Mario had warrants on him and did not want to go to jail so he pulled off.  (*DX 1, Hogan Depo. p. 33).*  Mario pulled out of the trailer park and onto Wares Ferry Road going toward the Atlanta Highway.  (*DX 1, Hogan Depo. p. 33 and DX 3, Gordon Depo. p. 37*).

Gordon called for back up units to assist him.  *(DX 3, Gordon Depo. pp. 33, 38).*  Gordon was advised by other units that they were en route to assist him.  *(DX 3, Gordon Depo. p. 38).*  While Gordon and other units were in pursuit, additional units arrived on the scene at Arnaud's Meats and advised dispatch of a forced code 16 (open building) to side window (reported at 00:08:30) and a confirmed 4B (burglary-business) (reported at 00:12:17). *(DX 2, Stuart Affidavit).*

 Mario crashed the car and they all jumped out of the car and fled on foot.  (*DX 1, Hogan Depo. p. 34 and DX 3, Gordon Depo. p. 45).*  The accident occurred at 00:12:17. *(DX 2, Stuart Affidavit).* The passenger side of the vehicle was against the fence.  *(DX 3, Gordon Depo. p. 45).* Gordon saw three occupants of the vehicle immediately bail from the driver's side of the vehicle.  *(DX 3, Gordon Depo. p. 45).*  Gordon saw Hogan exit the back seat on the driver's side.  *(DX 3, Gordon Depo. p. 46).*  Gordon jumped out of his vehicle with his partner, K-9 Osko, unleashed and

went after the suspect. *(DX 3, Gordon Depo.p p. 47, 48).* Gordon followed Hogan because Gordon knew that Hogan was the one he saw get in the vehicle. *(DX 3, Gordon Depo. p. 48).*

Hogan hid in the bushes on the side of a drainage ditch. (*DX 1, Hogan Depo. p. 34*). Hogan came out of the bushes with his hands up but somebody yelled something and the dog was released. (*DX 1, Hogan Depo. p. 34*). Hogan started running again. (*DX 1, Hogan Depo. p. 34*). Gordon and his partner were close when Hogan turned and yelled and went over the fence. *(DX 3, Gordon Depo. p. 48).* Hogan tried to jump another fence but the dog grabbed him. (*DX 1, Hogan Depo. p. 34*).

At that point Gordon held his spot and called for other units to get in the area. *(DX 3, Gordon Depo. pp. 49, 50).* Other units arrived and they began to track. *(DX 3, Gordon Depo. p. 50).*

Hogan was bit by another K-9 dog named Greg that is partnered with Corporal Mara. *(DX 3, Gordon Depo. pp. 50, 51).* Gordon did not apprehend any of the suspects. *(DX 3, Gordon Depo. p. 65).*

The original dispatch went out at 11:58:12 and 11:58:47. The forced code 16 (open building) to side window was reported at 00:08:30 and a confirmed 4B (burglary-business) was reported at 00:12:17. *(DX 2, Stuart Affidavit).* Detective Kirk Pelham was sitting at his computer eating a taco when the call went out for the alarm at Arnaud's Quality Meats. *(DX 4, Pelham Depo. p. 26).* Pelham did not think anything of it since the alarm at Arnaud's had gone off previously. *(DX 4, Pelham Depo. p. 26).* Pelham was listening to the radio to Officer Gordon and the officers that were the next unit on the scene at Arnaud's. *(DX 4, Pelham Depo. p. 27).* Pelham heard the officers on the scene say that a window had been busted out so Pelham got in his car and started that way. *(DX 4, Pelham Depo. p. 28).* Pelham did not arrive at Arnaud's at 425 N. Eastern Blvd until 1:12:21 on March 31. *(DX 2, Stuart Affidavit).*

6

Pelham had been listening to Gordon on the radio traffic prior to arriving on scene. *(DX 4, Pelham Depo. p. 55).* Pelham decided before he got to the business that based on what Gordon was reporting on the radio, Pelham would need a confession or some kind of property missing from the business, or maybe an identifiable witness to have a burglary. *(DX 4, Pelham Depo. p.55).* Once on the scene, Pelham talked to the owner, Anthony Arnaud. *(DX 4, Pelham Depo. p. 29).* Pelham asked Arnaud to inventory his business. *(DX 4, Pelham Depo. p. 29).* Arnaud could not find anything that appeared to be missing. *(DX 4, Pelham Depo. p. 28).* At that point, without any further interrogation or investigation, Pelham radioed his supervisor and told him there had not been a burglary. *(DX 4, Pelham Depo. p. 30).*

Gordon was also instructed by Detective Pelham to get the property out of the wrecked car and take it to headquarters. *(DX 3, Gordon Depo. p. 66).* Among the property removed from the vehicle were a gun, a ski mask, and a magazine for the gun. Gordon impounded the property from the car. *(DX 3, Gordon Depo. p. 72 and DX 5, Montgomery Property Inventory Sheet).* Gordon was cleared from the scene at 2:46:15. *(DX 2, Stuart Affidavit).*

The police were present at his business when Anthony Arnaud arrived. *(DX 6, Arnaud Depo. p.31).* Arnaud was advised of the chase. *(DX 6, Arnaud Depo. p.31)* Arnaud was told that if he wanted to press charges he had to go downtown. *(DX 6, Arnaud Depo. pp. 30-31).* Pelham contends Arnaud was pressured by Lt. Caulfield to sign an arrest warrant on Hogan. *(DX 4, Pelham Depo., p. 92).* Arnaud denied telling anyone that he did not want to press charges. *(DX 6, Arnaud Depo. pp. 38-39).* Arnaud denied that he was pressured by anyone at the Montgomery Police Department to sign the warrant against Hogan. *(DX 6, Arnaud Depo. pp. 38-39).* Pelham states that he tried to get Arnaud not to press charges and sign a "denial of prosecution form" but Arnaud

refused.  *(DX 4, Pelham Depo. p.67).*

Arnaud said he wanted to press charges if he had grounds and signed an Affidavit and Complaint for Burglary 3rd degree against Plaintiff Chad Hogan.  *(DX 6, Arnaud Depo. pp. 30-31, 38-39 and DX 7, Burglary Affidavit and Complaint).*   A Magistrate issued a Warrant of Arrest for Burglary Third Degree against Chad Hogan.  *(DX 8, Warrant of Arrest).*

Pelham contends that Gordon added elements to his statement submitted with the case file that Gordon did not actually see.  *(DX 4, Pelham Depo. pp. 38-39).* Pelham said anything was possible when asked if maybe Gordon saw what he actually wrote but just did not state it on dispatch.  *(DX 4, Pelham Depo. p.56).* However Pelham's recollection of what Gordon was reporting on the radio does not appear inconsistent with what was written:

> **Q.    All right. You said earlier that Officer Gordon typed out three separate statements. Do you allege that he said anything false in the statements?**
>
> **A.    After the first one, yes.**
>
> **Q.    What do you say was false?**
>
> **A.    Well, on the -- and I have a copy of the tape -- the tape, our dispatch tape. When he pulled into he parking lot, you know, he said just what he saw see. 150, I believe is his unit number. 150, I'm pulling into the parking lot. There's a vehicle in the parking lot. Subject just closed the door of the vehicle, drove off. That's just what he saw.**
>
> **And I knew then before I got to the business, based on what he saw, we were either going to have to get a confession out of Mr. Hogan or his friends or some kind of property missing from the business. Or, you know, maybe an identifiable witness.**
>
> **Q.    On the tape transcript, did he say that's all I saw or --**
>
> **A.    He said --**
>
> **Q.    -- did he simply say I saw someone getting in the car?**

        **A.    He said 150, I –– I'm pulling into the parking    lot of
               the business now. There's a –– I   observed a blue or a –
               – the vehicle. I forgot the description. I observed the
               passenger side door close and the vehicle is now leaving
               heading towards wherever.**

               **You know, had he said –– it could have been a different
               story had he said 150, I'm pulling into the parking lot;
               there's black male subject coming from the window or, you
               know, standing outside the vehicle.**

        **Q.   Is it possible that he could have seen that, just not
               informed dispatch of it?**

        **A.   I guess anything's possible.**

*(DX 4, Pelham Depo. pp. 54-56).*

Pelham states that he was told by his supervisor, Lt. Cook, to work the case. *(DX 4, Pelham*

*Depo. pp.67-68).*   Pelham prepared the Affidavit, Complaint and Warrant of Arrest.   *(DX 4, Pelham*

*Depo. p.113).*    Pelham took Hogan to the county jail.  *(DX 4, Pelham Depo. p. 62).*

 On Thursday morning, March 31, 2005, Major J. C. West, former Division Commander of

the Detective Division, was meeting with his staff to review the daily activity report from the

previous night.  *(DX 9, West Affidavit).*  West realized that there had been a burglary and one subject

was arrested but there were other subjects in the vehicle.  *(DX 9, West Affidavit).*  West asked one of

his supervisors, Lt. Randy Jones to get someone to find out, given all the circumstances of the

burglary, why only one person was charged and not the others in the vehicle.  *(DX 9, West Affidavit).*

Pelham was on third shift so he was in bed that morning when Sergeant Tatum from the

Detective Division called him.  Sgt. Tatum was upset about the arrest and asked Pelham why he did

not charge all of the suspects with burglary. *(DX 4, Pelham Depo. pp. 62-63).*  It was then that

Pelham told them what he contended happened the night before.  *(DX 4, Pelham Depo. pp. 62-63).*

Sgt. Tatum called him back with Lt. Randy Jones on the phone and Pelham told them his allegations

regarding the night before. *(DX 4, Pelham Depo. pp. 62-63).* Pelham then went back to bed. *(DX 4, Pelham Depo. p. 63).*

On Friday morning, April 1, 2005, West met with Kirk Pelham to discuss the incidents of the burglary arrest of March 31, 2005 and his concerns with the truthfulness of the statement by Gordon and why Pelham didn't feel comfortable with the arrest. *(DX 9, West Affidavit).* West took Detective Pelham to Internal Affairs and notified the Chief of Police. *(DX 9, West Affidavit).*

Chief A.D. Baylor was in Detroit, Michigan on April 1, 2005, attending a funeral. *(DX 10, Baylor Affidavit).* He received two phone calls: one from Lieutenant Pervis Fleming of Internal Affairs and one from Major J.C. West, Commander of the Detective Division advising him that Detective Kirk Pelham had expressed discomfort regarding an arrest made earlier that week. *(DX 10, Baylor Affidavit).* Detective Pelham's complaint was dealing with a burglary arrest and the actions of officers in K-9 and the detective division. *(DX 10, Baylor Affidavit).* Baylor immediately authorized internal affairs to contact the Legal Department regarding opening an investigation. *(DX 10, Baylor Affidavit).*

There was never any finding however that any of the officers complained of acted wrongfully, negligently or inappropriately. *(DX 10, Baylor Affidavit).* Furthermore, the traffic from the radio dispatch indicates that there had been a confirmed burglary. *(DX 2, Stuart Affidavit).* Pelham was not named as a Defendant although he prepared the documents for the arrest of Hogan: the burglary affidavit for Arnaud to sign, complaint, warrant, as well as, processed Hogan and took him to the county jail. *(PL 1, Complaint).*

Baylor nor West were present at the scene when Hogan was arrested. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).* Hogan never talked to Chief Baylor or Major West on the night in

question, nor has he talked to either one of them since. (*DX 1, Hogan Depo. p. 107*).

Approximately one month later, Pelham resigned from the Montgomery Police Department and filed a verified claim with the City Clerk alleging a hostile work environment in retaliation to his claims against other officers. *(DX 11, Pelham Verified Claim)*. In December 2005, Pelham sued the same Defendants: City of Montgomery, Baylor, West, Cook, Caulfield and Gordon, as well as, Scott Seithalil, another detective. *(DX 12, Pelham Complaint)*.

## IV.
### ARGUMENT

**1.  FOURTH AMENDMENT 42 U.S.C. § 1983 CLAIMS FOR FALSE ARREST/FALSE IMPRISONMENT AND MALICIOUS PROSECUTION**

It is well established that a claim pursuant to 42 U.S.C. § 1983 may lie for a Fourth Amendment violation where a plaintiff is arrested and detained incident thereto where such "seizure" is "unreasonable" in that it is neither pursuant to a warrant nor supported by probable cause. *See Ortega,* 85 F.3d at 1526; *Marx v. Gumbinner,* 905 F.2d 1503, 1505-06 (11th Cir.1990); *Reeves v. City of Jackson,* 608 F.2d 644, 650 (5th Cir.1979).

In addressing Section 1983 claims for false arrest, false imprisonment or malicious prosecution, our courts have held that common law is often a proper starting point for examining the elements and immunities applicable. *See Whiting v. Traylor,* 85 F.3d 581, 584 (11th Cir.1996); *Heck v. Humphrey,* 512 U.S. 477, 483-84, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Additionally, for civil rights liability pursuant to 42 U.S.C. § 1983 to attach to a municipality, it must be shown that municipal official or employee caused the deprivation of one's constitutional rights by acting pursuant to official governmental policy.

However, in the present case, there is no argument that can be made to hold the City liable or Baylor or West liable in their individual capacities for any constitutional violations. The City has no custom or policy to charge persons unlawfully to cover up wrongful or negligent conduct of its officers. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).* Baylor nor West were present when Hogan was arrested. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).*

However, even if the officials participated in the arrest, an arrest upon probable cause does not support an action under § 1983. *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001); *Wood v. Kesler*, 323 F. 3d 872 (11th Cir. 2003); *Knight v. Jacobson*, 300 F. 3d 1272 (11th Cir. 2002); *Lee v. Ferraro*, 284 F. 3d 1188 (11th Cir. 2002); *Rodriguez v. Farrell*, 280 F. 3d 1341 (11th Cir. 2002).

**2.    THE EXISTENCE OF PROBABLE CAUSE OR EVEN ARGUABLE PROBABLE CAUSE IS AN ABSOLUTE BAR TO A § 1983 ACTION**

The existence of probable cause is an absolute bar to a section 1983 action for false arrest. In order for probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances," *Bailey v. Board of County Com'rs of Alachua County, Fla., 956 F.2d 1112, 1119 (11th Cir.1992),* and an officer's subjective intentions and beliefs play no role in determining the existence of probable cause. *See Rankin v. Evans,* 133 F.3d 1425, 1433-34 (11th Cir. 1998). A **"law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge ... would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an**

**offense."** *Bailey* at 1120 (quoting *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990)) (Emphasis added).

Probable cause to arrest thus requires something more than "mere suspicion," *Mallory v. United States,* 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).  However probable cause but does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).  *Dahl v. Holley,* 312  F. 3d 1228, 1236 (11th Cir. 2002).  *See Adams v. Williams,* 407 U.S. 143, 149 (1972) (probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction); *Kelley v. Serna,* 87 F. 3d 1235, 1241 (11th Cir. 1996) (there is a substantial difference between the amount of proof necessary to constitute sufficient evidence to support a conviction and that necessary to support probable cause).

Pelham testified in his deposition that he heard Gordon state:

> **A.    …..I'm pulling into the parking lot. There's a vehicle in the parking lot. Subject just closed the door of the vehicle, drove off. That's just what he saw.**

Without even being on the scene, Pelham limited his investigation due to comments he heard over the radio.

> **And I knew then before I got to the business, based on what he saw, we were either going to have to get a confession out of Mr. Hogan or his friends or some kind of property missing from the business. Or, you know, maybe an identifiable witness…**
>
> **You know, had he said -- it could have been a different story had he said 150, I'm pulling into the parking lot; there's black male subject coming from the window or, you know, standing outside the vehicle…**

The officers that had arrived at Arnaud's however confirmed a forced open building at

00:08:30 and confirmed burglary to a business at 00:12:17.  *(DX 2, Stuart Affiavit)*.

Pelham was asked in his deposition what elements of crime he considered to secure a burglary warrant and he described basically what the officers on the scene at Arnaud's saw the night they responded to the burglar alarm call:

> Q.  **You also said that, I believe if I recall, that when you -- you heard the call come in for Officer Gordon when he arrived at Arnaud's. And, I believe, did you say you'd read the transcript of that radio dispatch or that radio report?**
>
> A.  **That -- that I have the tape, the audio.**
>
> Q.  **Okay. Okay. And you said that you knew at that point you were going to need a confession or something based on what he had said over the radio. You said that earlier in your deposition?**
>
> A.  **I know that -- right. I know that I will need either a confession from the suspects or property in the suspects' car, or something that would link them to going inside the business.**
>
> Q.  **Okay. Exactly, if you can just tell me --and I think Mr. Whitehead touched on this, but just for my clarification, what elements do you look for to secure a burglary warrant?**
>
> A.  **Number one, you've got to enter the business or the house, you know, with -- with the intent to take something.**
>
> Q.  **So you have to have a confession to have probable cause that somebody intended to enter?**
>
> A.  **No.**
>
> Q.  **Okay. What do you look for to secure a burglary warrant? What actions?**
>
> A.  ***Look for evidence that somebody burglarized the business. Evidence that the -- that the business was entered, you know. Don't have to have anything stolen from the business to have a burglary, but you do have to have some kind of entry, prove there was entry made.***

14

> Q.   **Have you ever charged anybody with attempted burglary? –**
>
> A.   **I think once or twice.**
>
> Q.   **And what kind of evidence did you look for, for that?**
>
> A.   **Same. You know, *intent to -- I think there was a time where somebody had kicked a door in and an officer pulled up before the burglary could happen. I don't know. Burglary tools, evidence of pry marks on the door.***

*(DX 4, Pelham Depo. pp. 133-135).* (Emphasis added).

Even if there were not probable cause for this arrest, arguable probable cause for an arrest will protect a municipal official from liability under § 1983. *Scarbrough v. Myles*, 245 F. 3d 1299, 1302 (11th Cir. 2001); *Rodriguez v. Farrell*, 280 F. 3d 1341 (11th Cir. 2002) (reasonable mistake in arresting plaintiff was not a constitutional violation); *Jones v. Cannon*, 174 F. 3d 1271 (1999); *Montoute v. Carr*, 114 F. 3d 181 (11th Cir. 1991).

The radio traffic indicates that a forced open building and confirmed burglary had been dispatched. *(DX 2, Stuart Affidavit).* In addition to the forced open window and confirmed burglary, the suspects fled from Gordon until they wrecked and then continued to run on foot. Additionally, during the inventory search of the vehicle, Gordon found the following items in the car: a 9mm handgun, a ski mask, and a flashlight. *(DX 3, Gordon Depo. p. 66 and DX 5, Inventory Sheet).* Hogan cannot rely on Pelham's limited opinion only to support his claim for violation of his constitutional rights under the Fourth Amendment. The undisputed facts support probable cause or arguable probable cause and prohibit Hogan from being successful on his claim for false arrest or false imprisonment.

Finally, the issuance of the warrant was required by law because the elements of the charge of

burglary were made out by the affidavit prepared by Detective Kirk Pelham for Anthony Arnaud to sign in order to press charges.  Rules 2.4, 3.1 and 3.2 *Ala.R.Crim.P.*; § 15-7-3, *Code of Alabama*, 1975.  Therefore, due to probable cause and a valid warrant,  Hogan's claim for false arrest and/or false imprisonment must fail against all Defendants and be dismissed.

### A.  CLAIMS AGAINST CHIEF BAYLOR AND MAJOR WEST IN THEIR INDIVIDUAL CAPACITIES FOR FALSE ARREST ARE DUE TO BE DISMISSED

Any claims alleged by Hogan that Chief Baylor or Major West are liable in their individual capacities for an alleged false arrest are due to be dismissed.

Pelham is not named as a Defendant although he was the officer that prepared the warrant, processed Hogan and took him to the county jail.  Gordon did not apprehend any of the suspects. (*DX 3, Gordon Depo. p. 65).*    However, the officers that did apprehend Hogan acted appropriately. Therefore Baylor and West should be dismissed from this suit.  A valid warrant was executed by a private citizen.  Anthony Arnaud stated that he was told that if he wanted to press charges he had to go downtown.  *(DX 6, Arnaud Depo. pp. 30-31).*   Pelham contends Arnaud was pressured by Lt. William Caulfield ("Caulfield") to sign an arrest warrant on Hogan.  *(DX 4, Pelham Depo., p. 92).* However Arnaud denied telling anyone that he did not want to press charges. *(DX 6, Arnaud Depo. pp. 38-39).* Arnaud denied hat he was pressured by anyone at the Montgomery Police Department to sign the warrant against Hogan.  *(DX 6, Arnaud Depo. pp. 38-39).* In fact, Pelham states that he tried to get Arnaud not to press charges and sign a "denial of prosecution form" but Arnaud refused.  *(DX 4, Pelham Depo. p.67).*

Arnaud said he wanted to press charges if he had grounds and signed an Affidavit and Complaint for Burglary 3rd degree against Plaintiff Chad Hogan.  *(DX 6, Arnaud Depo. pp. 30-31,*

*38-39 and DX 7, Burglary Affidavit and Complaint).*  A Magistrate issued a Warrant of Arrest for

Burglary Third Degree against Chad Hogan.  *(DX 8, Warrant of Arrest).*

Pursuant to §15-7-3, *Code of Alabama*, 1975 and the *Alabama Rules of Criminal*

*Procedure*, the magistrate was required to issue a warrant for Plaintiffs' arrest based on the probable

cause allegations of Arnaud.

As explained in *Blake v. Barton Williams, Inc.*, 361 So. 2d 376 (Ala. Civ. App. 1978), if an

arrest is made pursuant to a warrant issued by a lawfully authorized person, neither the arrest nor the

subsequent imprisonment is "false".  Thus, in *Nolin v. Town of Springville,* 45 F. Supp. 2d 894 (N.D.

Ala. 1999), the court held that under Alabama law, probable cause for arrest precluded a false arrest

claim.  Because the warrant was issued pursuant to the probable cause allegations of Defendant

Arnaud, Defendants cannot be held liable for that event.  *Nolin v. Town of Springville,* 45 F. Supp.

2d 894 (N.D. Ala. 1999).

### B.    CLAIMS AGAINST CHIEF BAYLOR AND MAJOR WEST IN THEIR INDIVIDUAL CAPACITIES FOR FALSE IMPRISONMENT ARE DUE TO BE DISMISSED

Any claims alleged by Hogan that Baylor or  West are liable in their individual capacities for

the alleged false imprisonment of Plaintiff are due to be dismissed.

Section 6-5-170, *Code of Alabama*, 1975, states that "[f]alse imprisonment consists in the

**unlawful** detention of the person of another for any length of time whereby he is deprived of his

personal liberty."  (Emphasis added).  It is undisputed that Hogan was detained when he was

arrested, booked and processed.   However, for an action for false imprisonment to succeed, the

plaintiffs must have been "unlawfully" detained.  That is not the case here.  Alabama law states that

if an arrest is made pursuant to a warrant issued by a lawfully authorized person, neither the arrest nor the subsequent imprisonment is "false". *Blake v. Barton Williams, Inc.*, 361 So. 2d 376, 378 (Ala. Civ. App. 1978).

Because Hogan's incarceration was the result of a valid warrant issued by a lawfully authorized person, neither the arrest nor the subsequent imprisonment was "false" or "unlawful". *Blake v. Barton Williams Inc.,* 361 So. 2d 376, 378 (Ala. Civ. App. 1978). *See Noland v. Jones*, 200 Ala. 577, 76 So. 935 (1917) (justification under legal process is a complete defense to an action for false imprisonment). Subsequently, the claim for false imprisonment is due to be dismissed.

### C.  CLAIMS AGAINST CHIEF BAYLOR AND MAJOR WEST IN THEIR INDIVIDUAL CAPACITIES FOR MALICIOUS PROSECUTION ARE DUE TO BE DISMISSED

Although not stated with specificity in the Complaint, any allegations against Chief Baylor and Major West are liable in their individual capacities for the alleged malicious prosecution of Hogan are due to be dismissed.

Hogan challenges the prevailing law set out by the Eleventh Circuit in *Kingsland v. City of Miami,* 382 F. 3d 1220 (11th Cir. 2004). Hogan claims a Fourth Amendment continuing seizure theory by virtue of the fact that he was on bond at the time the grand jury no billed the burglary charge. However Hogan cannot succeed on any claim of malicious prosecution because there was probable cause for his arrest.

A malicious prosecution action is not favored in Alabama. *Eidson v. Olin Corp.*, 527 So. 2d 1283 (Ala. 1988), citing *Cutts v. American United Life Insurance Co.,* 505 So. 2d 1211 (Ala. 1987), and *Boothby Realty Co. v. Haygood*, 269 Ala. 549, 114 So. 2d 555 (1959). The following elements

comprise a cause of action for malicious prosecution:

> (1) that a judicial proceeding was initiated by [the defendant] against [the plaintiff], (2) that the judicial proceeding was instituted without probable cause, (3) that the proceedings were instituted by the defendant maliciously, (4) that the judicial proceeding had been terminated in favor of the plaintiff, and (5) that the plaintiff suffered damage as a proximate cause of the judicial proceeding.

*Skinner v. Etheridge*, 564 So. 2d 902 (Ala. 1990).

Arnaud said he wanted to press charges if he had grounds and signed an Affidavit and Complaint for Burglary 3rd degree against Plaintiff Chad Hogan.  *(DX 6, Arnaud Depo. pp. 30-31, 38-39 and DX 7, Burglary Affidavit and Complaint)*.  A Magistrate issued a Warrant of Arrest for Burglary Third Degree against Chad Hogan.  *(DX 8, Warrant of Arrest)*.

There is no evidence that Chief Baylor or Major West initiated a judicial proceeding against the Plaintiffs.  Anthony Arnaud, a private citizen, swore out a warrant against Plaintiff.  There is no evidence that the warrant was issued without probable cause.  There is no evidence that Baylor or West acted maliciously.

While Hogan was not convicted, that fact does not negate probable cause to arrest.  "The mere fact that the plaintiff was acquitted in the prior action does not establish a want of probable cause."  *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 832 (Ala. 1999), citing *S.S. Kresge Co. v. Ruby*, 348 So. 2d 448 (Ala. 1977).  *See Shortz v. City of Montgomery*, 267 F. Supp. 2d 1124 (M.D. Ala. 2003) (eventual dismissal of case does not render arrest without probable cause).

Any allegations against Chief Baylor and Major West in their individual capacities for the alleged malicious prosecution of Hogan are due to be dismissed.

### D.  CLAIMS AGAINST CHIEF BAYLOR AND MAJOR WEST IN THEIR INDIVIDUAL

### CAPACITIES FOR ABUSE OF PROCESS ARE DUE TO BE DISMISSED

Although not stated with specificity in the Complaint, any allegations against Baylor and West in their individual capacities for the alleged abuse of process are due to be dismissed.

The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice. *Triple J Cattle, Inc. v. Chambers,* 621 So.2d 1221, 1225 (Ala.1993). Malicious prosecution concerns the wrongful *issuance* of process; abuse of process concerns the wrongful *use* of process *after it has been issued. Warwick Dev. Co. v. GV Corp.,* 469 So.2d 1270, 1274 (Ala.1985); *Wilson v. Brooks,* 369 So.2d 1221 (Ala.1979); *Clikos v. Long,* 231 Ala. 424, 165 So. 394 (1936); *Dickerson v. Schwabacher,* 177 Ala. 371, 58 So. 986 (1912).

Each element of abuse of process must be proven and Hogan cannot prove any. Hogan contends that the ulterior motive was to avoid civil liability however there is no civil liability because there was probable cause for the arrest. Additionally, Hogan cannot prove a wrongful use of process. In *C.C. & J., Inc. v. Hagood,* 711 So.2d 947 (Ala. 1998), the Supreme Court addressed the element of wrongful use of process. C.C. & J. Inc., aka, The Movie Gallery had signed a criminal complaint against Hagood for Theft by Fraudulent Leasing or Rental of Property based on unreturned videos. However, Hagood did not sign the rental agreement. The Movie Gallery later entered a settlement agreement on the criminal charge and dismissed the case. Hagood sued for abuse of process claiming that the criminal action was initiated order to collect a civil debt.

The Court held:

> "Merely proceeding with a criminal complaint and later agreeing to dismiss the charge cannot constitute a wrongful use because:
> "[T]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions···· [I]t is what is done in the course of

20

negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." W. Page Keeton et al., *Prosser and Keeton on Torts* § 121, at 898 (5th ed.1984); *See also Donohoe Constr. Co. v. Mount Vernon Assocs.,* 235 Va. 531, 539-41, 369 S.E.2d 857, 862 (1988")

Finally, Hogan cannot prove malice by Baylor and West. § 6-11-20, *Code of Alabama*, 1975, (which addresses punitive damages) defines malice "as the intentional doing of a wrongful act without just cause or excuse either with an intent to injure the person or property of another person. . . or under such circumstances that the law will imply an evil intent." Hogan's claim for abuse of process must fail and all claims against Baylor and West are due to be dismissed.

**3.  CHIEF BAYLOR AND MAJOR WEST ARE ENTITLED TO QUALIFIED IMMUNITY**

Every officer on March 31, 2005, responded to assist Gordon whether involved in the vehicle pursuit or apprehension of suspects, were acting in the line and scope of their duties based on the fact that there had been a confirmed burglary on a scene where the suspects fled and were involved in a vehicle and foot pursuit.  However, Baylor nor West were present.  *(DX 9, West Affidavit and DX 10, Baylor Affidavit).*

A supervisor sued in his individual capacity in a federal civil rights action is entitled to qualified immunity unless a reasonable supervisor would have known that his actions were unlawful in light of clearly established law and information that he possessed.  *Dolihite v. Maughon*, 74 F. 3d 1027 (11th Cir. 1996), *cert. denied*, 519 U.S. 870 (1997).  Such liability must be predicated on either actual participation in the unconstitutional act by the supervisor or a causal connection between the supervisor's action and a plaintiff's injury.  *Id.*  In this case there was neither.

As previously stated, Baylor and West did not participate in the issuance of the warrant, the arrest, the booking, the jailing or any prosecution of Hogan.  *(DX 9, West Affidavit and DX 10,*

*Baylor Affidavit).* There is no causal connection between any action (or inaction) by Chief Baylor and Major West and Hogan's alleged injuries. Thus, both individuals are entitled to qualified immunity.[1] *See e.g., Gold v. City of Miami*, 121 F. 3d 1442 (11th Cir. 1997), *cert. denied*, 525 U.S. 870 (1998) (police chief entitled to qualified immunity for alleged failure to train officers which such failure to train was alleged to have caused injury); *Baker v. Putnal*, 75 F. 3d 190 (5th Cir. 1996) (no proof of police chief's knowledge of gravity of situation so that he could have responded in time to prevent plaintiff's injury).

The complaint in the instant case demonstrates no personal involvement of either Major West or Chief Baylor. Therefore, the suit against them in their individual capacity pursuant to § 1983 must fail.

**4. CHIEF BAYLOR AND MAJOR WEST ARE ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY**

Every officer on March 31, 2005, responded to assist Gordon whether involved in the vehicle pursuit or apprehension of suspects, were acting in the line and scope of their duties based on the fact that there had been a confirmed burglary on a scene where the suspects fled and were involved in a vehicle and foot pursuit. However, Baylor nor West were present. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).*

Section 6-5-338, *Code of Alabama*, 1975 statutorily provides law enforcement officers with immunity from state law tort claims arising out of acts committed while the law enforcement officers engage in the performance of discretionary functions.[2] The performance of the discretionary

---

[1] There is no constitutionally protected interest not to be indicted or be charged with a crime. *See Albright v. Oliver*, 510 U.S. 266 (1994); *David v. Village of Oak Lawn*, 954 F. Supp. 1241, 1244-45 (N.D. Ill. 1996).

[2] In *Ex parte City of Gadsden*, 781 So. 2d 1936 (Ala. 2000), the Alabama Supreme Court held that a police officer's decision to pursue a suspect instead of securing a well lit accident scene with no injuries was a discretionary act entitled to qualified immunity because the decision required the exercise of judgment and choice and involved

functions must be within the scope of the officer's law enforcement duties.  In this case, Baylor and

West are sued individually for an arrest in which they had no participation.

Section 6-5-338(a) states as follows:

> [E]very peace officer, except constables, who is employed or
> appointed pursuant to the Constitution or statutes of this state,
> whether appointed or employed as such peace officer by the state or a
> county or a municipality thereof, or by an agency or institution,
> corporate or otherwise, created pursuant to the Constitution or laws of
> this state and authorized by the Constitution or laws to appoint or
> employ police officers or other peace officers, and whose duties are
> prescribed by the law, or by the lawful terms of their employment or
> appointment include the enforcement of, or the investigation or
> reporting of violations of, the criminal laws of this state, and who is
> empowered by the laws of this state to execute warrants, to arrest and
> to take into custody persons who violate, or who are lawfully charged
> by warrant, indictment or other lawful process with violations of, the
> criminal laws of this state shall at all times be deemed to be officers
> of this state, and as **such shall have immunity from tort liability**
> arising out of his or her conduct in the performance of any
> discretionary function within the line and scope of his or her
> enforcement duties. (Emphasis supplied).

The framework for analyzing discretionary function immunity claims under the quoted code

section involves a two-prong inquiry.  If the defendant officer can prove that he was "engaged in the

performance of discretionary functions at the time the alleged torts occurred", then the burden shifts

"to the plaintiff to demonstrate the defendant acted in bad faith, with malice or willfulness in order to

deny them immunity."  *Sheth v. Webster,* 145 F. 3d 1231, 1238-39 (11th Cir. 1998); *Wright v. Wynn,*

682 So. 2d 1, 2 (Ala. 1996).

It is clear in this case that Baylor nor West were involved in the issuance of an arrest warrant

for Hogan.  However, Hogan has alleged that Baylor and West are liable to him in their individual

---

what was just and proper under the circumstances.

capacities based on the fact that as Police Chief and Division Commander, they could "limit the violation of Hogan's rights". *(PL 1, Complaint, ¶ 67).*

As previously set out, the totality of the circumstances that occurred on March 31, 2005, provide probable cause or arguable probable cause. Additionally it is undisputed that a gun, ski mask and mag light were found in the wrecked vehicle. Hogan was arrested and charged with burglary based on a lawful warrant supported by an affidavit of Arnaud. Baylor and West were not present. As such, Chief Baylor and Major West may not be held liable pursuant to the immunity provisions of § 6-5-338. *See Wood v. Kelser,* 323 F. 3d 872 (11th Cir. 2003) (officers had discretionary function immunity for false arrest and malicious prosecution); *see also Ex parte City of Montgomery*, 758 So. 2d 567 (Ala. 1999) (municipality and officer entitled to immunity from arrestee's claims of malicious prosecution, assault and false imprisonment); *Moore v. Adams*, 754 So. 2d 630 (Ala. 1999) (city and state trooper sued in individual capacity by homeowner for false imprisonment, trespass and assault as a result of the execution of search warrant were entitled to discretionary immunity where officers broke open homeowner's door after announcing their presence three times and demanding entry); *Montgomery v. City of Montgomery*, 732 So. 2d 305 (Ala. Civ. App. 1999) (police officers were engaging in discretionary function when they made an arrest and thus officers were immune from liability on arrestee's malicious prosecution claim although arrestee was not person named in warrant and despite conflicting facts relating to the identity of the arrestee which were available to the officers at the time of the arrest). *Wright v. Wynn*, 682 So. 2d 1 (Ala. 1996) (officers immunity from false arrest in mistaken identity situation); *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176 (M.D. Ala. 1999); *Williams v. City of Montgomery*, 48 F. Supp. 2d 1317 (M.D. Ala. 1999) (police supervisor did not act willfully or maliciously or in bad faith in

24

deciding to postpone overnight investigation of domestic violence victim's felony stalking claims; officers were entitled to discretionary function immunity from tort liability even if supervisor had reason to believe victim was in eminent peril).

It cannot be disputed that the daily activities of Baylor and West involve discretionary functions. Their acts are in the exercise of judgment and choice and involve choosing what is just and proper under the circumstances. *See Ex parte City of Gadsden*, 781 So. 2d 936, 938 (Ala. 2000).

The burden then shifts to the Plaintiffs to demonstrate that Defendants acted in bad faith, with malice or willfulness in order to deny them immunity. *Sheth v. Webster*, 145 F. 3d 1231 (11th Cir. 1998); *see also Wright v. Wynn*, 682 So. 2d 1 (Ala. 1996).

It is apparent from the evidence that Baylor nor West acted in bad faith, with malice or willfulness with respect to the alleged unlawful actions concerning Hogan.

According to *Alabama Pattern Jury Instruction*, 29.01 "willfulness" is the "conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied <u>with a design or purpose to inflict injury</u>." (Emphasis supplied). The charge distinguishes between "wanton conduct" and "wanton injury" because purpose and intent or design to injure is not necessary for wantonness. Additionally, the charge states:

> But in 'willful conduct' and 'willful injury' a purpose or intent or design to injure is an ingredient; where a person with knowledge of the danger or peril to another consciously pursues a course of conduct with design, intent, and purpose of inflicting injury then he is guilty of willfulness.

*Id.*

There is no evidence of such intent by Defendants in the present case. As a consequence, Defendants Baylor and West are entitled to summary judgment.

Nor are Defendants guilty of malice toward Plaintiff. *Black's Law Dictionary*, 862 (5th ed. 1979), defines malice as the "intentional doing of a wrongful act without just cause or excuse, with intent to inflict injury under circumstances that the law will imply an evil intent.... A condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse." Elsewhere § 6-11-20, *Code of Alabama*, 1975, defines malice "as the intentional doing of a wrongful act without just cause or excuse either with an intent to injure the person or property of another person. . . or under such circumstances that the law will imply an evil intent."

Because neither Baylor nor West played a role in the issuance of the warrant against Hogan or the subsequent arrest, they could not have acted with malice towards Hogan. Absent the existence of malice, the allegations against Baylor and West must be dismissed. In accordance with law, the motion for summary judgment should be granted as to any state law tort claims against Baylor and West in their individual capacity.

**5.     CHIEF BAYLOR AND MAJOR WEST CANNOT BE HELD INDIVIDUALLY LIABLE UNDER § 1983**

As stated, Baylor nor West had any involvement in the issuance of the warrant, the arrest, the booking, the jailing or any subsequent prosecution of Hogan. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).* In fact Hogan has never talked to either of them. *(DX 1, Hogan Depo. p. 107).* Moreover, neither individual was supervising the individual officers at the specific time of Hogan's arrest. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).* It was not until after Hogan had been arrested that Baylor or West knew that Hogan had been charged. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).*

However, even if the Court were to conclude that Baylor and West were involved in the supervision of the officers on the day that Hogan was arrested, jailed or any other prosecution of the matter, supervisory personnel cannot be held liable under § 1983 for the actions of subordinates under the theory of respondeat superior; they may only be held liable if they personally participated in the acts comprising alleged constitutional violations or instigated or adopted a policy of violating constitutional rights. *Ortega v. Christian*, 85 F. 3d 1521, 1526 (11th Cir. 1996) (police chief not liable under § 1983 for officer's false arrest of plaintiff where no evidence that chief approved of officer's decision to arrest); *Adams v. Poag*, 61 F. 3d 1537, 1544 (11th Cir. 1996). Baylor and West are entitled to be dismissed from the § 1983 portion of this suit in their individual capacities.

**6.    CHIEF BAYLOR AND MAJOR WEST ARE ENTITLED TO GOVERNMENTAL OR SOVEREIGN IMMUNITY**

Section 6-5-338, *Code of Alabama*, 1975 specifies governmental or sovereign immunity from tort liability for the conduct of police officers in the line of duty. The statute provides that police officers in the line of duty "**shall at all times by deemed to be officers of this state**, and as such shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her law enforcement duties." (Emphasis supplied).

The operative words contained in the statute are that a law enforcement officer is deemed to be an "officer of the state." As a consequence, he/she is entitled to the sovereign or governmental immunity established by Article I §14 of the Constitution of Alabama (1901). That constitutional provision provides that the State of Alabama shall never be made a defendant in any court of law or equity. The courts of Alabama have held that a sheriff and his deputies are officers of the state and

27

have sovereign immunity pursuant to Article I §14 of the Alabama Constitution of 1901. *Drain v. Odom,* 631 So. 2d 971 (Ala. 1994); *Wright v. Bailey*, 611 So. 2d 300 (Ala. 1992) (deputy sheriff entitled to sovereign immunity in action alleging failure to arrest motorist he knew or should have known was intoxicated); *Boshell v. Walker County Sheriff*, 598 So. 2d 843 (Ala. 1992) (sheriff immune from suit seeking damages for assault and false arrest); *Hereford v. Jefferson County,* 586 So. 2d 209 (Ala. 1991) (sheriff and deputy immune from robbery victim's suit based on release of prisoner who was serving a life term).

Section 6-5-338 makes a municipal police officer an officer of the state. Thus, officers such as Chief Baylor and Major West are entitled to the same type immunity that is provided to sheriffs and deputy sheriffs by Article I §14 of the Alabama Constitution.

Because Hogan is bringing claims against Chief Baylor and Major West in their individual capacities, his claims are statutorily barred. Pursuant to § 6-5-338, summary judgment should be granted as to all claims against them in their individual capacities based on governmental or sovereign immunity.

**7.   CLAIMS OF CONSPIRACY DUE TO BE DISMISSED**

Hogan's Complaint contains nothing more than unsubstantiated allegations of a conspiracy. A naked assertion of conspiracy is insufficient foundation for either a § 1983 or § 1985 claim. *Harris v. Menendez,* 817 F. 2d 737 (11th Cir. 1987).

Hogan's claim under § 1985 must fail because a cause of action under that section requires (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or the equal privileges or immunities under the law; and (3) an act in furtherance of the conspiracy, and (4) whereby a person is either injured in his person or

property or deprived of a right or privilege of a citizen of the United States. *Lucero v. Operation Rescue,* 954 F. 2d 624, 627 (11th Cir. 1992). The fourth element of the cause of action is absent because the Plaintiff has no constitutional right not to be charged with a crime. Likewise, the second element is absent. There has been no deprivation of equal protection and it "requires a showing of some <u>racial</u>, or perhaps otherwise class-based, <u>invidiously discriminatory animus</u> behind the conspirators' action." (Emphasis supplied) *Id*. at 628. It follows that if Hogan has not proven a prima facie case of discriminatory intent on the part of any of the Defendants, then neither can he establish a conspiracy to act in such a manner. *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). Thus, Defendants are entitled to summary judgment on Hogan's conspiracy claim.

In *Byrd v. Clark*, 783 F. 2d 1002 (11th Cir. 1986), the Court held that the police chief was not liable for the actions of police officers in arresting, releasing and subsequently re-arresting the plaintiff as there was no evidence that he entered into any conspiracy with any other defendant or anyone else to deprive the plaintiff of any constitutional rights.

Moreover, Defendants Baylor and West assert the doctrine of intracorporate conspiracy. That doctrine applies to Plaintiff's § 1985 claims if such are involved in this case. *Dickerson v. Alachua County Comm'n.*, 200 F. 3d 761, 768 (11th Cir. 2000). "Under that doctrine, a [municipal] corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denney v. City of Albany,* 247 F. 3d 1172, 1190 (11th Cir. 2001); *Godby v. Montgomery County Board of Education*, 996 F. Supp. 1390, 1412 (M.D. Ala. 1998). The intracorporate conspiracy doctrine applies to § 1983 conspiracy claims as well. *Rojicek v. Community Consol. School. Dist.*, 934 F. Supp. 280 (M.D. Ill. 1996).

Chief Baylor and Major West are entitled to be dismissed because there is an absence of

evidence that they participated in any conspiracy.

**8.  CLAIM OF FAILURE OR REFUSAL TO PREVENT VIOLATION MUST BE DISMISSED**

Hogan's claim against Baylor and West in Count V for failure or refusal to prevent violations pursuant to 42 *U.S.C.* § 1986 must also be dismissed.  42 *U.S.C.* § 1986 states, in part:

> "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in <u>section 1985</u> of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action…"

Hogan cannot succeed on his claims that officers acted wrongfully, unlawfully or in any other way in violation of the Fourth Amendment or his claim of conspiracy 42 *U.S.C.* § 1985.  Therefore Hogan cannot succeed on his claim against Baylor and West of failure to refusal to prevent said violation.

**9.  CLAIMS AGAINST THE CITY OF MONTGOMERY**

*A.      42 U.S.C.A. §1983 Municipal Liability*

For civil rights liability pursuant to 42 U.S.C. § 1983 to attach to a municipality, it must be shown that the municipal official or employee caused the deprivation of one's constitutional rights by acting pursuant to official governmental policy.  Hogan alleges that the City has a policy or custom of charging persons with a crime in order to evade liability for wrongful or negligent conduct on the part of the police officers.  There is nothing in this case to support a claim that any of Defendant officers were wrongful or negligent.  Additionally, there is no custom or policy of charging persons

with a crime in order to evade liability for wrongful or negligent conduct on the part of the police

officers. *(DX 9, West Affidavit and DX 10, Baylor Affidavit).* Although Hogan alleges that the City

engaged in a custom or policy that caused a violation of his civil rights, when ask to provide

evidence of his allegation, Hogan merely relies on his claim of false arrest:

> **Q. Mr. Hogan, let's go back to Exhibit 1, which is your interrogatories. It's that right there (indicating). On the last page, or the next to the last page --excuse me --interrogatory number thirteen, I asked you:**
>
> **In paragraph twenty-six of the complaint, you allege that the City of Montgomery has and maintains a policy, practice or custom by which the city seeks to charge with a crime all persons injured in encounters with police officers employed by the city whether or not there is probable cause to believe that a crime has been committed. Please describe in detail all evidence you have to support that such a policy, practice or custom exists (reading).**
>
> **You responded: The fact that you wrongfully arrested me without probably (sic) cause shows that there is a policy, practice or custom exists (reading).**
>
> **My question: Is your incident, the incident that happened to you, your sole basis for alleging that they have a policy or practice or custom? Do you know of any other incidents similar to yours that have happened?**
>
> **A. No.**
>
> **Q. Do you know anyone with personal knowledge within the Montgomery Police Department or that has personal knowledge associated with the Montgomery Police Department that such a policy, practice or custom exists?**
>
> **A. No.**

*(DX 1, Hogan Depo. pp. 63-64 and PL 3, Plaintiff's Responses to Interrogatories).*

Hogan has not submitted evidence that any final policymaker of the City acted with an

unconstitutional motive.   Merely using the words "policy" or "custom" or "unconstitutional" in the allegation is not sufficient to state a claim under 42 U.S.C. § 1983.  *See Monnell v. Dept. of Social Services*, 436 U.S. 658 (1978).  Hogan has not proved any wrongful or negligent conduct by any employee of the City of Montgomery Police Department but rather made conclusory allegations in an effort to try to make the City liable.  Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment.  *Fed.Rules Civ.Proc*.Rule 56(c).

A municipality is liable only for its own wrongs and cannot be liable under the theory of respondeat superior.  Hogan may not base claims against the City on respondeat superior or vicarious liability; rather, he must show an official policy or custom of the City directly caused the alleged injury to him. A governing entity cannot be held liable in an action brought pursuant to 42 U.S.C.A. § 1983 under a theory of respondeat superior.  *Monell v. Department of Social Services of New York City,* 436 U.S. 658, 694 (1978).

In *Monell*, the Supreme Court held that municipalities cannot be liable under §1983 on the theory of respondeat superior, but rather, can be liable under that statute only if they maintain unconstitutional or illegal policies or customs; absent unconstitutional or illegal policies or customs, municipalities and their officials may not be sued for the acts of their employees.  Moreover, a plaintiff must show that an official policy was the reason behind the alleged constitutional deprivation.  *Farred v. Hicks,* 915 F. 2d 1530 (11th Cir. 1990).

It is well established that a local government agency or its officials "may only be liable under §1983 if an action pursuant to official policy of some nature caused a constitutional tort."  *Church v. City of Huntsville*, 30 F. 3d 1332, 1342 (11th Cir. 1994); *Dowdell v. Chapman,* 730 F. Supp. 533,

545 (M.D. Ala. 1996) (causal link must be established between official policy and custom and plaintiff's injury).  It is only when execution of municipal policy or custom inflicts constitutional injury that the municipality or its official policymakers are responsible under §1983.  *Monell v. New York Dept. of Social Services, supra* at 694.  The Plaintiff must show the official policy or custom was the reason behind the alleged constitutional deprivation. *Farred v. Hicks, supra.*

In some situations a municipality or its officials may be subject to §1983 liability for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval from the bodies of official decision making channels." *Monell v. New York Dept. of Social Services, supra* at 690-91.  Such liability requires that the Plaintiff provide evidence that establishes "a widespread practice that, 'although not authorized by written law or express municipal policy is so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).  Stated differently, "a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Lauderdale,* 923 F. 2d 1474, 1481 (11th Cir. 1991).  In such circumstances, however, "considerably more proof than [a] single incident will be necessary" to establish liability. *Oklahoma City v. Tuttle,* 471 U.S. 808, 834 (1985).

A governmental entity can only be held responsible under §1983 for the unauthorized actions of its employees when its final decision makers participated in a policy or custom which resulted in a constitutional violation or a governmental entity can be held liable under §1983 when constitutional violations arise from "custom", even though the custom is not the product of a formal adoption by the municipal policy making authorities.  *Monell*, 436 U.S. 658, 690-691.

In the present case, Hogan cannot succeed on his claim of a practice or custom that would make the City of Montgomery liable under 42 U.S.C. § 1983.  Indeed, the police officers were compliant with state and federal law in the arrest of Hogan.  Furthermore, to succeed on his claim, Hogan will also have to present evidence that in execution of the affidavit and warrant, someone outside of the police department participated in a policy or custom of the City to violate Hogan's rights.

In *Byrd v. Clark*, 783 F. 2d 1002 (11th Cir. 1986) the trial court granted summary judgment in favor of the municipality.  That decision was affirmed on appeal.  The Eleventh Circuit Court of Appeals concluded that in the absence of any evidence of a policy, practice or custom, either express or implied, which contributed to the alleged violation of plaintiff's constitutional rights when she was arrested, released and rearrested, the city was not liable to plaintiff under §1983.  In the present case, the City did not engage in any activity nor did it implement any custom or policy that caused Plaintiff to be deprived of a constitutional right.

In order to recover there must be a causal connection between the policy or custom of the municipality and the constitutional right alleged to have been violated.  *Church v. City of Huntsville,* 30 F. 3d 1332, 1342 (11th Cir. 1994).  To establish causation, "a plaintiff must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Board of County Comm'rs. of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404 (1997).  The causal link must be such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run."  *Spell v. McDaniel,* 424 F. 2d 1380, 1389-91 (4th Cir. 1987); *McCroy v. City of Dothan,* 169 F. Supp. 2d 1260, 1285 (M.D. Ala. 2001).  *See City of Canton v. Harris,* 489 U.S. 378, 391 (1989) (the identified deficiency must be closely related to the ultimate

34

injury).

In the present case, Hogan alleges that the City maintains a policy or custom of charging persons with at crime that are injured through contact with police officers in order to evade liability for the wrongful or negligent conduct of police officers. However there is nothing to support his claim. As a consequence, the claims against the City must fail. Plaintiff fails to state any facts that support a theory that the City participated in any policy, practice, or custom which resulted in a violation of §1983. The City of Montgomery is entitled to summary judgment on Hogan's claims of constitutional violations as there is no genuine issue of any material fact.

### B.    INTENTIONAL TORT CLAIMS

*ALA. Code* § 11-47-190 (1975), which states, in part:

> "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. .."

(Emphasis added.)

*ALA. Code* §11-47-190 (1975) provides that an action against a municipality may only lie for the "neglect, carelessness, or unskillfulness" of its agents. The City may claim immunity and not be held liable for wanton and intentional acts of its agents in accordance with both statutory and case law. *Hilliard v. City of Huntsville*, 585 So. 2d 889 (Ala. 1991).

### C. *DISCRETIONARY FUNCTION IMMUNITY*

Section 6-5-338(b), *Code of Alabama*, 1975 provides immunity not only to peace officers but governmental units and agencies authorized to appoint peace officers. The statute is explicit that liability will not attach unless a police officer acts willfully or maliciously. In concluding that a municipality is immune from allegations of negligence based on that statute, the Alabama Supreme Court in *City of Birmingham v. Sutherland*, 2002 WL 475176 (Ala. 2002) rejected the claim that allegations of negligence would defeat the immunity provided by subsection (b) of §6-5-338. As a consequence, the court held that the trial court improperly denied the city's motion for summary judgment based on allegations that its police officer negligently engaged in the false arrest of the defendant. The court examined the circumstances and found that the officer was acting within his discretionary function in effectuating a warrantless felony arrest. Consequently, the court concluded that the trial court erred in not finding that the city had discretionary function immunity (i.e. immunity from tort liability) arising out of the police officer's conduct in the performance of his discretionary function within the line and scope of his law-enforcement duties.

### V.
### CONCLUSION

Hogan cannot succeed on any claims for Fourth Amendment violations. The undisputed facts provide probable cause, or arguable probable cause, for his arrest. Therefore his claims of constitutional violations are due to be dismissed.

The event at issue in this case is precisely the situation for which discretionary function immunity under § 6-5-338 and qualified immunity under § 1983 were designed. Those statutes protect police and municipal officials from tort liability when acting within the line and scope of

their duties.    Plaintiff was arrested, booked, processed and jailed in the manner all persons are processed when arrested pursuant to a valid arrest warrant.  Consequently, the claims of Plaintiff should be dismissed on the grounds of state and federal immunity.

Further, Plaintiff has failed to prove that the City has a custom or policy that violated his constitutional rights.   Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. *Fed.Rules Civ.Proc.* Rule 56 (c).

Finally, it is well established in Alabama that a municipality cannot act with intent; therefore, all intentional tort claims against the City of Montgomery be dismissed.  The arrest of Plaintiff was lawful.  Summary Judgment in favor of Defendants City of Montgomery, Police Chief Baylor and Major J. C. West is proper and all claims against them should be dismissed.

Respectfully submitted this 14th day of July, 2006.

<u>/s/ Kimberly O. Fehl</u>
Kimberly O. Fehl (FEH001)

OF COUNSEL:

City of Montgomery
City Attorney's Office
P. O. Box 1111
Montgomery, AL 36101-1111
Telephone:  (334) 241-2050
Facsimile:  (334) 241-2310

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing upon the following by placing a copy in the United States mail, postage prepaid and properly addressed or electronic email , on this the 14th day of July, 2006.

Andy Nelms, Esq.
*Law Offices of Jay Lewis, LLC*
Suite 100
847  S. McDonough
Montgomery, AL 36104

H. Lewis Gillis, Esq.
Christopher K. Whitehead, Esq.
Hon. Ramadanah M. Salaam
*Thomas, Means, Gillis & Seay, P.C.*
P.O. Box 5058
Montgomery, Alabama 36103


/s/ Kimberly O. Fehl
OF COUNSEL