KIRK PELHAM                          )
                                     )
vs.                                  )
                                     )
CITY OF MONTGOMERY                   )

RECEIVED
MAY 12 2005
CITY ATTORNEY'S OFFICE

## VERIFIED CLAIM AGAINST CITY OF MONTGOMERY

COMES NOW, Kirk Pelham, by and through his attorney of record and hereby makes his verified claim against the City of Montgomery. As grounds therefore, he states as follows:

1. On March 31, 2005 at 11:58 PM, an alarm was received at Arnaud's Quality Meat on the Eastern Blvd., Montgomery, Alabama. At that time a Montgomery Police Department K-9 Unit responded as well as a Patrol Unit. On this day, date and time Kirk Pelham was a Detective assigned to the Property Bureau of the Detective Division with the Montgomery Police Department working 7pm to 6am shift. Detective Pelham monitored the radio traffic and learned that the K-9 unit observed an automobile leave from the nearby parking lot and was following the automobile with the patrol unit as back up. At that time another patrol unit proceeded to the store as did Detective Pelham. When the units arrived at the business they observed an open window at the business and shortly thereafter the owner of the business also arrived.

2. The owner of the business, Anthony Arnaud, went into the business and advised that there had not been a burglary as he was the one that had left the window open. Also, he advised that due to the stormy weather that night that he had already come to the business earlier in the evening when the alarm had gone off initially.



DEFENDANT'S EXHIBIT
11
tabbies

3. During the time that Detective Pelham was at the business, he learned that the K-9 unit had given chase to the automobile which was earlier seen leaving the vicinity and that the automobile had wrecked at Pelzer and Warringwood Drive. He also learned that the K-9 dog had bitten one of the occupants of the vehicle.

4. Detective Pelham advised his supervisors, Lieutenant Cook and Sergeant Johnson from the scene that the owner stated that his business had not been entered and that there had been no crime committed at the location. At that time Lieutenant Caulfield, the K-9 supervisor, advised that there had been an incident at the business and that someone had to be charged.

5. At that time, Lieutenant Cook advised all of the units to come to police headquarters to make statements. While at police headquarters it was learned that the subject bitten by the dog had NOT entered the building but had been at the Break Room Pool Hall located near the business. Further, it was learned that the subjects in the car refused to stop for the K-9 unit because they had marijuana in their possession.

6. K-9 Officer Gordon was given three chances to make a statement regarding this incident and none of the statements contained the necessary elements for the charge of burglary. After each statement Detective Pelham met with his supervisor and advised him that the statements did not have the necessary elements for the charge of burglary.

7. However, the K-9 supervisor was adamant that the subject was charged with the said burglary and Pelham was given a direct order by his supervisor to have the owner sign the warrant. It was learned by Pelham that the K-9 division had an incident the week before when one of the dogs bit another subject on the Alabama State University Campus. Lieutenant Caulfield was adamant that the subject be charged so that they could

"justify the bite". The Alabama State University incident had been reported in the news the night before and K-9 was in "hot water" over the preceding incident. .

8. Detective Pelham talked with the owner of the business and then learned that the owner had been talked with by Lieutenant Caulfield. At this time Mr. Arnaud was tired and wanted to go home and just wanted to sign the warrant. The warrant was signed and the subject was placed in the Montgomery County Detention Facility.

9. However, when the shift was over Detective Pelham went home but could not sleep because of the innocent man being put in jail. He contacted Lieutenant Randy Jones, the day shift supervisor and then they went to see Major J.C. West regarding this incident. Major West warned Pelham that if he asked for an Internal Investigation that it would make him as well as the Detective Division look bad. At that time Major West contacted Chief Baylor, who was out of town and explains the situation to him. Detective Pelham is ordered not to talk to anyone regarding the matter.

10. At the time that they leave Major West's office, Sergeant Tatum takes Detective Pelham into his office and "goes off on him" regarding the reporting of the incident.

11. Later that day, Pelham gives his statement to Mike Trotter and Pervis Fleming of the Internal Affairs Division. It was shortly thereafter that the harassment begins in which he is cursed by Lieutenant Caulfield as well as others in the Detective Division.

12. Detective Pelham was told that he needed to "watch his back". Further, the Detective Division supervisors took his automobile away from him and then assigned him a large number of cases to attempt to work from Police Headquarters without a vehicle. Detective Pelham did live outside the police jurisdiction, however, as with other

detectives he had been informed that he could take his city vehicle home. He had been informed that if there was an accident or incident that he only needed to notify his supervisors and they would put him "on call". This practice was only recently demonstrated when a Detective who lives in the City of Tallassee, Alabama had a house fire which also destroyed his City vehicle. At the time of the fire he notified his supervisors who immediately changed his status from off duty to on call in order to cover the loss of the vehicle.

13. Detective Pelham was also warned that he needed to leave his locker as well as his personal vehicle locked as someone would possibly put illegal drugs or contraband in his locker or vehicle.

14. Detective Pelham requested of his supervisors as well as of the Mayor that he be allowed to transfer into another division of the Montgomery Police Department through out the month this incident was pending. During the month that the investigation was pending Detective Pelham was forced to take personal leave to remove him self from the hostile environment.

15. Detective Pelham advised his supervisors of the harassment as well as informing Mayor Bright in an e-mail of the same. This e-mail went unanswered by the Mayor Bright. Detective Pelham contacted to Mayor's Office and was given an appointment with Michael Briddell, the Mayor's administrative assistant some ten days after his request

16. However, prior to his meeting with Mr. Briddell, he was assaulted by another Montgomery Police Department Detective when he was hit with a large flashlight in the ankle bone causing bruising as well as swelling.

17. Detective Pelham radioed Major West after the attack, reported the attack and was advised to seek medical attention. Due to the fact that Detective Pelham had no assigned City Vehicle he took his personal automobile to Pri-Med to seek medical attention for his injury.

18. It was after this incident that Detective Pelham and due to his repeated requests for a transfer from the Detective Division which were ignored that Detective Pelham was forced to resign his employment on May 2, 2005.

19. The Montgomery Police Department had over a month to complete an investigation into the false arrest and to heed Detective Pelham's repeated requests to be transferred to another Division within the Police Department. All of his requests for transfer went unheeded which then resulted in his being assaulted by a member of the Montgomery Police Department.

**WHEREFORE the premises considered,** based upon the deliberate actions of the employees of the City of Montgomery as well as the lack of security and negligence of the said City of Montgomery, the Claimant demands damages in the amount of $250,000.00 from the said City of Montgomery.

Done this the 10th day of May, 2005.

_Kirk Pelham_
KIRK PELHAM

STATE OF ALABAMA
MONTGOMERY COUNTY

BEFORE ME, the undersigned authority, a notary public in and for said State and County, personally appeared KIRK PELHAM, who being first duly sworn by me, deposes and says that he has read the foregoing instrument and says that he did voluntarily sign the same after being advised of the nature and effects thereof, and authorizes its filing with the Court.

SWORN TO AND SUBSCRIBED to on this the 10TH day of May, 2005.

_Rebecca H Moore_
NOTARY PUBLIC    DS1706

OF COUNSEL:

_Roianne Houlton Conner_
ROIANNE HOULTON CONNER

THE LAW OFFICES OF
ROIANNE HOULTON CONNER
ATTORNEY FOR PETITIONER
250 WINTON M. BLOUNT LOOP
MONTGOMERY, ALABAMA 36117
(334) 215-1988