IN THE CIRCUIT COURT
FOR THE 15TH JUDICIAL CIRCUIT
FOR THE STATE OF ALABAMA

| | |
|---|---|
| LEONARD KIRK PELHAM, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CASE NO. CV-05-3116 |
| ) | |
| CITY OF MONTGOMERY (MONTGOMERY ) | |
| POLICE DEPARTMENT); DETECTIVE ) | |
| SCOTT SEITHALIL; ) | |
| LIEUTENANT WILLIAM CAULFIELD; ) | |
| LIEUTNANT RONALD COOK; ) | |
| CANINE OFFICER J.M. GORDON; ) | |
| MAJOR J.C. WEST; ) | |
| CHIEF ART BAYLOR; ) | |
| Fictitious Defendants ) | |
| "A"; "B"; "C"; "D"; "E"; "F"; ) | |
| "G"; "H"; and "I"; ) | |
| whether singular or plural, those ) | |
| other persons, corporations, firms, ) | |
| or other entities whose wrongful ) | |
| conduct caused or contributed to ) | |
| cause the injuries and damages to ) | |
| the Plaintiff, all of whose true and ) | |
| correct names are unknown to ) | |
| Plaintiff at this time, but will be ) | |
| substituted by amendment when ) | |
| ascertained, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Leonard Kirk Pelham, by and through his attorney, and for a complaint against the Defendants, state and allege as follows:

### I. JURISDICTION AND VENUE

1. This court has jurisdiction over the Plaintiff's claim as the tortious actions complained of



are causes of actions pursuant to state law.

2. Venue herein is proper in Montgomery County, State of Alabama, as the actions taken by the members of the Montgomery Police Department and the lack of action taken by the Mayor and/or Chief of Police's Office occurred in the City of Montgomery, Montgomery County, Alabama.

## II. PARTIES

3. The Plaintiff, Leonard Kirk Pelham is an individual over the age of nineteen years and has resided in the State of Alabama, at all times pertinent hereto.

4. The Defendant, the City of Montgomery is a municipality located in the State of Alabama, Montgomery County, of which the Montgomery Police Department is an entity under the said supervision of the City of Montgomery.

5. The Defendant, Scott Seithalil is an employee of the City of Montgomery working in the Montgomery Police Department as a Detective at all times during which the said Scott Seithalil assaulted the Plaintiff with his flashlight. Scott Seithalil is sued in his official and INDIVIDUAL capacity.

6. The Defendant, Lieutenant William Caulfield, is a Lieutenant with the City of Montgomery working in the Montgomery Police Department and is over the age of nineteen years. Caulfield is sued in his official and INDIVIDUAL capacity.

7. The Defendant, Lieutenant Ronald Cook, is a Lieutenant with the City of Montgomery working in the Montgomery Police Department and is over the age of nineteen years. Cook is sued in his official and INDIVIDUAL capacity.

8. The Defendant, Canine Officer J.M. Gordon, is a Canine Officer with the City of

Montgomery working in the Montgomery Police Department and is over the age of nineteen years. Gordan is sued in his official and INDIVIDUAL capacity.

9. The Defendant, Major J.C. West, is a Major with the City of Montgomery working in the Montgomery Police Department and is over the age of nineteen years. West is sued in his official and INDIVIDUAL capacity.

10. The Defendant, Chief Art Baylor, is the Chief of Police with the City of Montgomery working in the Montgomery Police Department and is over the age of nineteen years. Baylor is sued in his official and INDIVIDUAL capacity.

11. The Plaintiff avers that there are a number of persons who acted in collusion with the named Defendants, whose identities are presently unknown to the Plaintiff but who will be added as parties upon ascertainment of their true identities.

### III. FACTS

12. On March 31, 2005 at 11:58 PM, an alarm was received at Arnaud's Quality Meat on the Eastern Blvd., Montgomery, Alabama. At that time a Montgomery Police Department K-9 Unit responded as well as a Patrol Unit.

13. On this day, date and time Kirk Pelham was a Detective assigned to the Property Bureau of the Detective Division with the Montgomery Police Department working 7pm to 6am shift.

14. Detective Pelham monitored the radio traffic and learned that the K-9 unit observed an automobile leave from the nearby parking lot and was following the automobile with the patrol unit as back up.

15. At that time another patrol unit proceeded to the store as did Detective Pelham.

When the units arrived at the business they observed an open window at the business and shortly thereafter the owner of the business also arrived.

16. The owner of the business, Anthony Arnaud, went into the business and advised that there had not been a burglary as he was the one that had left the window open. Also, he advised that due to the stormy weather that night that he had already come to the business earlier in the evening when the alarm had gone off initially.

17. During the time that Detective Pelham was at the business, he learned that the K-9 unit had given chase to the automobile which was earlier seen leaving the vicinity and that the automobile had wrecked at Pelzer and Wareingwood Drive. He also learned that the K-9 dog had bitten one of the occupants of the vehicle.

18. Detective Pelham advised his supervisors, Lieutenant Cook and Sergeant Johnson from the scene that the owner stated that his business had not been entered and that there had been no crime committed at the location.

19. At that time Lieutenant Caulfield, the K-9 supervisor, advised that there had been an incident at the business and that someone had to be charged.

20. At that time, Lieutenant Cook advised all of the units to come to police headquarters to make statements.

21. While at police headquarters it was learned that the subject bitten by the dog had NOT entered the building but had been at the Break Room Pool Hall located near the business. Further, it was learned that the subjects in the car refused to stop for the K-9 unit because they had marijuana in their possession.

22. K-9 Officer Gordon was given three chances to make a statement regarding this

incident and none of the statements contained the necessary elements for the charge of burglary. After each statement Detective Pelham met with his supervisor and advised him that the statements did not have the necessary elements for the charge of burglary.

23. However, the K-9 supervisor was adamant that the subject was charged with the said burglary and Pelham was given a direct order by his supervisor to have the owner sign the warrant. It was learned by Pelham that the K-9 division had an incident the week before when one of the dogs bit another subject on the Alabama State University Campus.

24. Lieutenant Caulfield was adamant that the subject be charged so that they could "justify the bite." The Alabama State University incident had been reported in the news the night before and K-9 was in "hot water" over the preceding incident.

25. Detective Pelham talked with the owner of the business and then learned that the owner had been talked with by Lieutenant Caulfield. At this time Mr. Arnaud was tired and wanted to go home and just wanted to sign the warrant. The warrant was signed and the subject was placed in the Montgomery County Detention Facility.

26. However, when the shift was over Detective Pelham went home but could not sleep because of the innocent man being put in jail. He contacted Lieutenant Randy Jones, the day shift supervisor and then they went to see Major J.C. West regarding this incident. Major West warned Pelham that if he asked for an Internal Investigation that it would make him as well as the Detective Division look bad. At that time Major West contacted Chief Baylor, who was out of town and explained the situation to him. Detective Pelham was ordered not to talk to anyone regarding the matter.

27. At the time that they left Major West's office, Sergeant Tatum took Detective Pelham

-5-

into his office and "goes off on him" regarding the reporting of the incident.

28. Later that day, Pelham gave his statement to Mike Trotter and Pervis Fleming of the Internal Affairs Division. It was shortly thereafter that the harassment began in which he was cursed by Lieutenant Caulfield as well as others in the Detective Division. Detective Pelham was told that he needed to "watch his back".

29. Further, the Detective Division supervisors took his automobile away from him and then assigned him a large number of cases to attempt to work from Police Headquarters without a vehicle.

30. Detective Pelham did live outside the police jurisdiction, however, as with other detectives he had been informed that he could take his city vehicle home. He had been informed that if there was an accident or incident that he only needed to notify his supervisors and they would put him "on call".

31. This practice was only recently demonstrated when a Detective who lives in the City of Tallassee, Alabama had a house fire which also destroyed his City vehicle. At the time of the fire he notified his supervisors who immediately changed his status from off duty to on call in order to cover the loss of the vehicle.

32. Detective Pelham was also warned that he needed to leave his locker as well as his personal vehicle locked as someone would possibly put illegal drugs or contraband in his locker or vehicle.

33. Detective Pelham requested of his supervisors as well as of the Mayor that he be allowed to transfer into another division of the Montgomery Police Department through out the month this incident was pending. During the month that the investigation was

pending Detective Pelham was forced to take personal leave to remove himself from the hostile environment.

34. Detective Pelham advised his supervisors of the harassment as well as informing Mayor Bright in an e-mail of the same. This e-mail went unanswered by Mayor Bright. Detective Pelham contacted the Mayor's Office and was given an appointment with Michael Briddell, the Mayor's administrative assistant some ten days after his request

35. However, prior to his meeting with Mr. Briddell, he was assaulted by another Montgomery Police Department Detective, Scott Seithalil, when he was hit with a large flashlight in the ankle bone causing bruising as well as swelling.

36. Detective Pelham radioed Major West after the attack, reported the attack and was advised to seek medical attention. Due to the fact that Detective Pelham had no assigned City Vehicle he took his personal automobile to Pri-Med to seek medical attention for his injury.

37. It was after this incident that Detective Pelham, due to his repeated requests for a transfer from the Detective Division which were ignored Detective Pelham was forced to resign his employment on May 2, 2005, due to the hostile working environment.

38. The Montgomery Police Department had over a month to complete an investigation into the false arrest and to heed Detective Pelham's repeated requests to be transferred to another Division within the Police Department. All of his requests for transfer went unheeded which then resulted in his being assaulted by a member of the Montgomery Police Department.

## IV. COUNT ONE: NEGLIGENCE

39. The Plaintiff incorporates and realleges paragraphs one through thirty-eight, as if fully set forth herein.

40. The Defendant, City of Montgomery, and particularly the Montgomery Police Department, has been negligent in the training and supervision of the officers and supervisors of the Montgomery Police Department thereby condoning the actions of the personnel in the illegal actions and in the creation of the hostile working environment which caused the Plaintiff to have to resign his employment. Further, the City of Montgomery was negligent in the investigation of the allegations made by the Plaintiff as to the illegal arrest of Chad Hogan as well as the investigation of the assault and battery on the Plaintiff.

41. Due to the negligence of the City of Montgomery and particularly, the Montgomery Police Department the Plaintiff has been damaged as is set forth in paragraph twelve through thirty-eight set forth hereinabove and incorporated herein by reference.

**WHEREFORE THE PREMISES CONSIDERED**, the Plaintiff demands judgment against the Defendant for a sum to include both compensatory and punitive damages, together with interest, costs and expenses of this action.

## V. COUNT TWO: ASSAULT AND BATTERY

42. The Plaintiff incorporates and realleges paragraphs one through forty-one as if fully set forth herein.

43. The Defendant, Scott Seithalil, committed an assault and battery upon the person of the Plaintiff by physically hitting the ankle of the Plaintiff with a flashlight without his permission.

44. Said touching of the Plaintiff by the Defendant was intentional, offensive, and un-

welcomed.

45. The Plaintiff did not consent to the touching of his person by the Defendant Scott Seithalil.

46. The repeated touching by the Defendant Scott Seithalil was done with malice and a reckless indifference to the Plaintiff's emotional and physical well-being.

**WHEREFORE THE PREMISES CONSIDERED**, the Plaintiff demands judgment against the Defendant for a sum to include both compensatory and punitive damages, together with interest, costs and expenses of this action.

### VI. COUNT THREE: INFLICTION OF EMOTIONAL AND MENTAL DISTRESS

47. The Plaintiff incorporates and realleges paragraphs one through forty-six as fully set forth herein.

48. The Defendants, did as a proximate consequence of their intentional actions have caused the Plaintiff to suffer severe emotional distress due to the actions of the Defendants as is set forth in paragraphs twelve through thirty-eight set forth herein above.

**WHEREFORE THE PREMISES CONSIDERED**, the Plaintiff demands judgment against the Defendants for a sum to include both compensatory and punitive damages, together with interest, costs and expenses of this action.

### VII. COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL AND MENTAL DISTRESS

49. The Plaintiff incorporates and realleges paragraphs one through forty-eight as fully set forth herein.

50. All of the Defendants, as a proximate consequence of their negligent and or intentional

actions, have caused the Plaintiff to suffer severe emotional distress.

**WHEREFORE THE PREMISES CONSIDERED**, the Plaintiff demands judgment against the Defendant for a sum to include both compensatory and punitive damages, together with interest, costs, and expenses of this action.

### VIII. COUNT FIVE: INTERFERENCE WITH BUSINESS RELATIONSHIP

51. The Plaintiff incorporates and realleges paragraphs one through fifty as fully set forth herein.

12. The aforementioned conduct of the Defendants were done intentionally, recklessly, wantonly, and negligently and has caused an economic injury to the Plaintiff as is set forth hereinabove due to the creation of the hostile work environment which caused the Plaintiff to resign his position. Due to the actions of the Defendants, the Plaintiff has been forced to file bankruptcy and has taken a position which compensates him at a lower rate of pay and benefits.

13. As a proximate consequence of the Defendants' actions, the Plaintiff was injured and damaged as set forth in paragraphs twelve through thirty-eight as set forth herein above.

**WHEREFORE THE PREMISES CONSIDERED**, the Plaintiff demands judgment against the Defendant for a sum to include both compensatory and punitive damages, together with interest, costs, and expenses of this action.

### IX. REQUESTED RELIEF

The Plaintiff requests from this Honorable Court the following relief:

1. To award the Plaintiff compensatory damages for all of the economic injuries caused by the actions of the Defendant either through their neglect and/or intentional actions.

2. Award the Plaintiff compensatory damages for his physical and emotional suffering and related medical and therapeutic expenses.

3. Award the Plaintiff punitive damages.

4. Award the Plaintiff all expenses accrued as was necessary to litigate this matter, which includes and is not limited to attorney's fees, expert witness fees, and etc.

5. Award the Plaintiff costs, expenses, interest and such other relief as this Honorable Court may deem proper.

**Done and Dated** this the  22  day of November, 2005.

*Leonard Kirk Pelham*
Leonard Kirk Pelham

### VERIFICATION

**BEFORE ME**, the undersigned Notary Public, appeared Leonard Kirk Pelham, who is known to me after being duly sworn, did sign his name as attestation that the foregoing allegations contained in this complaint are true and correct to the best of his knowledge, information and belief, on this the  22  day of November, 2005.

*Leonard Kirk Pelham*
Leonard Kirk Pelham

**SWORN TO** and subscribed before me on this the  22  day of November 2005.

*Rebecca H Moore*
NOTARY PUBLIC
My Commission Expires: 05/17/06

*[signature]*
ROIANNE HOULTON CONNER (FRI021)
ATTORNEY FOR PLAINTIFF

**OF COUNSEL:**
ROIANNE HOULTON CONNER (FRI021)
LAW OFFICE OF ROIANNE HOULTON CONNER

P.O. BOX 240458
250 WINTON BLOUNT LOOP
MONTGOMERY, AL 36117
(334)215-1988 OFFICE PHONE
(334)215-7778 FACSIMILE

## JURY DEMAND

Plaintiff hereby demands trial by Jury of all issues of this cause.

*/s/ Roianne Houlton Conner*
ROIANNE HOULTON CONNER

# M E M O R A N D U M



TO : Walter Byars
City Attorney

FROM : Brenda Gale Blalock
City Clerk

DATE : December 30, 2005

RE : Leonard Kirk Pelham v. City of Montgomery....
Case Number: CV-05-3116
Claim Number: 2005 0165

I received the attached information on the above-referenced, which I am forwarding for your action.

NOTE: This was forwarded to your office, May 13, 2005.

Thank you.

BGB:tbh

ATTACHMENTS

```
PROGRAM NAME:   CK100L          CITY OF MONTGOMERY          DATE PREPARED DEC 30, 2005

                              CLAIMS MANAGEMENT RECORD

CLAIM# (YR, CLASS, CHRON):  2005   165                    INCIDENT
                                                          DATE:   3/31/2005

                     FIRST       MI.    LAST
CITY EMPLOYEE:
OTHERS:              KIRK              PELHAM


DPT/DIV:   62 10                             POLICE DEPARTMENT

REPORT REQUESTED DATE:    / /           DATE RECEIVED:     / /

INCIDENT LOCATION:          EASTERN BLVD                  (BLOCK, DIR, STREET)

CITY:  MONTGOMERY            STATE:  AL

NATURE OF ACCIDENT:     VERIFIED CLAIM AGAINST CITY OF MONTGOMERY
        HAND DELIVERED



           DAMAGE ESTIMATE    CITY PAYMENT    FINAL    WC    VEHICLE#
VEHICLE: $                   $
BODILY:  $                   $
PROPERTY $                   $
PAY RECD:  N    DATE:  / /             PAID:  N       DATE:   / /
PAY AGREE: N    DATE:  / /             AGENT:
       MEMO TO W. BYARS TO HANDLE & FILE CLOSED 5-13-05


LAWSUIT STYLE:                                            DATE:   / /


FILE CLOSED: Y        DATE CLOSED:  5/13/2005
```