IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **CHAD HOGAN,** | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 2:05-cv-687-WKW-VPM |
| | * | |
| **CITY OF MONTGOMERY, et al.,** | * | |
| Defendants. | * | |

### PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS COOK, CAULFIELD AND GORDON

COMES NOW Plaintiff and prays that the Court will overrule and deny the motions for summary judgment filed by Cook, Caulfield and Gordon in support of which would show the Court as follows:

### STATEMENT OF FACTS

From Plaintiff's point of view, the following contains the facts relevant to this case.

The plaintiff was with his friends on March 30, 2005. (Deposition Hogan p.32). At approximately 10:30 p.m. the friends the Break Room pool hall near Lagoon Park in north Montgomery, Alabama. (Depo. Hogan p.30-1). They drove from the pool hall toward Wares Ferry Road. (Depo. Pelham p.27). It was raining heavily. (Depo. Gordon p. 27). The driver could not see. (Depo. Hogan p. 32). The plaintiff was in the back seat of the car. (Depo. Hogan p. 32). The driver pulled into a large parking area at a distance from a business known as Arnaud's Quality Meats. (Depo. Hogan p. 32). The four friends sat in the car waiting for the rain to subside. (Depo. Hogan p. 32).

At approximately the same time, a security alarm went off at Arnaud's Quality Meats. (Depo. Arnaud p. 18). According to the owner Mr. Anthony Arnaud, the alarm had falsely activated

several times that night. (Depo. Arnaud p. 19). The alarm triggered a call to the City of Montgomery Police Department. (Depo. Arnaud p. 8). The defendant M.D. Gordon, a K-9 officer with the police department, was then dispatched to Arnaud's Quality Meats. (Depo. Gordon p. 8). Gordon arrived on the scene. He radioed dispatch that he was on the scene. (Depo. Gordon p. 22).

Gordon claims that upon arrival he immediately saw a person, he later learned to be the plaintiff, walking from Arnaud's Quality Meats to the parked car. (Depo. Gordon p. 31). Gordon claims he saw this person enter the car. (Depo. Gordon p. 29). He witnessed the car leave the scene. (Depo. Gordon p. 33). Gordon follows the car across the parking lot into a trailer park. (Depo. Gordon p. 34). Gordon reports his location and activities to dispatch via radio. (Depo. Pelham p. 55). Gordon does not radio report witnessing a person walking from Arnaud's Quality Meats. (Depo. Pelham p. 55). In fact, Gordon offers no description of any person walking between Arnaud's Quality Meats and the parked car until much later at police headquarters. (Depo. Pelham p. 55).

Gordon was operating an unmarked vehicle. (Depo. Gordon p. 13). Some time after following the car, Gordon turned on his emergency lights. (Depo. Gordon p. 34). Gordon attempted to initiate a stop. (Depo. Gordon p. 34). The driver of the car refused to stop. (Depo. Gordon p.33-34). A chase ensued. (Depo. Gordon p. 43-44). The car ultimately ran off the road crashing. (Depo. Gordon p. 45). The occupants, including the plaintiff, ran from the scene of the crash. (Depo. Gordon p. 47-48). Gordon called for back up. (Depo. Gordon p.37). Another K-9 officer, Mora, arrived on the scene. (Depo. Gordon p. 51). After a search the plaintiff was arrested by K-9 Officer Mora. (Depo. Gordon p. 51). During the arrest the plaintiff was bitten by Mora's police dog. (Depo. Hogan p. 35). The plaintiff was arrested then taken to police headquarters. (Depo. Hogan p. 35).

At approximately the time the false alarm from Arnaud's Quality Meats was reported,

Detective Kirk Pelham was sitting at his desk at police headquarters. (Depo. Pelham p. 28). Pelham was a property detective charged with investigating thefts of property. (Depo. Pelham p. 16). In response to the alleged burglary, Pelham left the police station. (Depo. Pelham p. 28). He traveled directly to Arnaud's Quality Meats where he met with the proprietor, Mr. Anthony Arnaud. (Depo. Pelham p. 29). Mr. Arnaud informed Pelham that the window to the store had been intentionally left open. (Depo. Pelham p. 29). Mr. Arnaud also informed Pelham that nothing in the store had been taken. (Depo. Pelham p. 29). It was continuing to rain outside yet there were no wet footprints within the store. (Depo. Pelham p. 30). Mr. Arnaud explained to Pelham that the motion detector in the store had caused several false alarms. (Depo. Pelham p. 64). Pelham further investigated the scene then radioed his supervisor Lieutenant Ron Cook. (Depo. Pelham p. 30). Pelham informed Cook that no burglary had occurred. (Depo. Pelham p. 30,35).

     Pelham instructed Mr. Arnaud to secure the property and come to police headquarters. (Depo. Pelham p. 31). Once at headquarters, Pelham learned that the plaintiff and another suspect were in custody. (Depo. Pelham p. 31). Pelham interviewed Mr. Arnaud. (Depo. Pelham p. 31). He then separated the plaintiff from the other suspect then interviewed both suspects separately. (Depo. Pelham p. 30-1). Pelham noted that the two suspects had very similar stories. (Depo. Pelham p. 32). The plaintiff stated that he did not enter the store. (Depo. Hogan p.34). The plaintiff claimed that he never exited the car near or around Arnaud's Quality Meats. (Depo. Hogan p.36). Pelham called the Break Room pool hall and confirmed that in fact the men had been there that night and had left a short time earlier. (Depo. Pelham p.32). Pelham went to Lieutenant Ron Cook again explaining that he felt that no crime had been committed. (Depo. Pelham p.37-47). Cook advised Pelham to wait and see what the other officers had to say. (Depo. Pelham p.35).

Officer Gordon arrived at headquarters and typed a statement. (Depo. Pelham p.35-8). Gordon's statement of the events at scene near Arnaud's Quality Meats was given to Pelham. (Depo. Pelham p.36-7). Pelham noticed that elements necessary to show that the crime of burglary had been committed were not present in Gordon's statement. (Depo. Pelham p.37). Pelham again went to Cook. (Depo. Pelham p.37). Pelham explained to Cook that the statement did not have the elements necessary to support a claim of burglary. (Depo. Pelham p.37-8). Lieutenant Cook called Officer Gordon's supervisor, Lieutenant Caulfield. (Depo. Pelham p.37-8). Caulfield was the K-9 supervisor. (Depo. Pelham p.60). Cook told Caulfield that the requisite elements of burglary were not present in Officer Gordon's statement. (Depo. Pelham p.39-40). Caulfield explained that he would discuss the matter with Gordon and get a new statement. (Depo. Pelham p.48). Gordon then wrote a new statement of the events. (Depo. Pelham p.61-2).

Shortly after the original statement was written by Gordon, Pelham asked Gordon if he could identify the suspect at the scene near Arnaud's Quality Meats. (Depo. Pelham p.58). Gordon stated to Pelham that he could not. (Depo. Pelham p.58).

Gordon's first statement simply stated that Gordon pulled into the parking lot, saw a car with passengers, observed a passenger door close and then witnessed the car drive off. (Depo. Pelham p.37). The second statement claims Gordon saw the vehicle in the parking lot, observed a black male standing outside the vehicle next to the window and noted that the vehicle was near the building or Arnaud's Quality Meats. (Depo. Pelham p.38).

Pelham noted to Lieutenant Cook that he believed the second statement also lacked the elements necessary for a burglary charge. (Depo. Pelham p.39). Pelham expressed concern that no burglary had taken place and that Gordon was falsifying his statement. (Depo. Pelham p.41). Cook

later explained that Gordon would come back and fix the statement. (Depo. Pelham p.39-40). Gordon did a third statement. (Depo. Pelham p.41). The third statement claims that Gordon pulled into the parking lot, observed a vehicle a in the parking lot, observed a black male coming from the area of the window of the business and then witnessed the black male cross the parking lot to the waiting car. (Depo. Pelham p.42).

After the third statement, Pelham called Cook again. (Depo. Pelham p.52-3). He explained that under the circumstances, he did not feel comfortable with the statement. (Depo. Pelham p.53, 62). Cook stated he would again call Caulfield. (Depo. Pelham p.48). Pelham later heard from Cook that Caulfield stated that Gordon was "having an articulation problem". (Depo. Pelham p.48). Pelham was instructed to move ahead with the paperwork charging burglary. (Depo. Pelham p.53).

Pelham asked Cook to explain which suspect should be charged. (Depo. Pelham p.49). This was important to Pelham. Typically they would charge all suspects related to the crime. (Depo. Pelham p.32). Cook again called Caulfield. (Depo. Pelham p.48). According to Cook, Caulfield stated that the suspect that had been bitten by the dog should be charged. (Depo. Pelham p.49)

Pelham returned to his desk to finish the paperwork. Pelham claims he received a lot of "heat" from K-9 and patrol officers to prosecute a case against the plaintiff. (Depo. Pelham p.50). Apparently, some time earlier another dog handled directly by Officer Gordon had bitten a man near Alabama State University. (Depo. Gordon p.89). There was an allegation that the bite at Alabama State University was unlawful. (Depo. Gordon p.89, 90). The event was a topic of some discussion among the police department. (Depo. Gordon p.90). K-9 Officer Mora, who had actually physically arrested the plaintiff directly after the car chase and wreck, confronted Pelham explaining that they were police officers and that police officers should not stab each other in the back. (Depo. Pelham

p.73).

Pelham claims that Caulfield made a comment that the bite needed to be justified and that the plaintiff needed to be charged. (Depo. Pelham p.53). Caulfield explained to Pelham that after the Alabama State University incident they did not need to get into deeper trouble. (Depo. Pelham p.52). Pelham continued to feel uncomfortable about the situation. (Depo. Pelham p.53). He discussed the issue again with Cook. (Depo. Pelham p.53). According to Pelham, Cook stated that it was not the investigator's problem that the burden of proof was with the K-9 officers. (Depo. Pelham p.53). Pelham objected stating that he was the case agent. (Depo. Pelham p.53). Pelham explained that he would ultimately have to be the person to testify at trial. Cook explained that he was getting a lot of heat from Caulfield to complete the warrant. (Depo. Pelham p.72). Cook encouraged Pelham to move forward with the case. (Depo. Pelham p.53). Pelham did finish the paperwork on the plaintiff. The plaintiff was booked for burglary and transported to the county jail. (Depo. Pelham p.54).

## LEGAL ARGUMENT

### a. Jurisdiction and Venue

The Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 134394) and 1367. The parties have not contested personal jurisdiction or venue. The allegations and facts of this matter indicate that all relevant issues take place in the Middle District of Alabama.

### b. Standard of Review

Under Rule 56( c ) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essential issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). The burden is on the moving party to show the absence of a genuine issue as to any material fact, and in deciding whether the movant has met its burden the court must view the moving party's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the movant meets its initial burden under Rule 56( c ), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted) (cited in *Allen v. Tyson Foods, Inc*. 121 F.3d 642, 645 (11th Cir.1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985)).

    **c. Unreasonable Seizure - 42 U.S.C. §1983; False Arrest and Imprisonment**.

Pursuant to Section 1983, the plaintiff claims that Cook, Gordon and Caulfield violated his Fourth Amendment right by unlawfully arresting and detaining him without probable cause.[1]  In

---

[1] Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity

response, the defendants maintain that they are entitled to qualified immunity.

### I. Qualified Immunity.

"Qualified immunity offers complete protection for governmental officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.2d 1340, 1346 (11th Cir. 2002)( quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818)(1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation mark and citations omitted). See also, *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred." *Id*. In the instant case, the parties do not dispute that the defendants were acting within their discretionary capacity when they arrested and detained the plaintiff. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*.

The United States Supreme Court has set a two-part test in order to determine whether a public official is entitled to qualified immunity. The threshold inquiry is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated

---

protected by the Constitution or laws of the United States. 42 U.S.C. §1983. In this case, it is undisputed that at all times relevant the defendants were acting under color of state law.

a constitutional right?" *Brosseau v. Haugen*, 543 U.S. 194 (Dec.13, 2004), 125 S.Ct. 596 (2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity." *Saucier*, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier*, 533 U.S. at 201). Employing this analytical framework, the plaintiff demonstrates that the defendant are not entitled to the protections provided through qualified immunity.

In this case the plaintiff does not dispute that probable cause existed on some levels throughout the course of events transpiring on the night of March 30, 2005. Clearly Officer Gordon had probable cause to follow the car containing the plaintiff. Gordon was acting prudently when he initiated the traffic stop. Gordon was again acting appropriately when he pursued the fleeing vehicle. Ironically, all the officers involved in the apprehension of the plaintiff acted appropriately prior to the arrest. The plaintiff does not even make claim that the dog bite he received was an act of excessive force. The plaintiff's contention is simple, the violation to protected rights occurs when these defendants, having actual knowledge that a crime had not been committed, continued to hold the plaintiff and prosecute the case.[2]

  **ii. Arguable Probable Cause**.

---

[2] An obvious question may present itself to the reader, why was Detective Pelham not named as a defendant. Pelham went on a crusade to have the charges dropped. Pelham complained to his superiors that the plaintiff was being wrongfully held and prosecuted. As a result, Pelham was ridiculed by his fellow officers, abused by his superiors and physically attacked. Pelham resigned as an officer over this entire affair. The charges against the plaintiff were ultimately dropped, in part due to Pelham's efforts.

The plaintiff claims that the defendants violated his constitutional rights under the Fourth Amendment by unlawfully arresting and detaining him without probable cause. The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause. See *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004)(citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1332.

This Circuit has further defined the issue explaining that qualified immunity requires that the arresting officer have arguable probable cause rather than actual probable cause. "Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999). Hence, "[i]n the context of a wrongful arrest claim, an officer will be protected by qualified immunity if he had arguable probable cause to effectuate the arrest." *Brown v. Head*, 228 F. Supp. 2d 1324, 1328 (M.D. Ala. 2002). Such an inquiry is objective as the Court must ask whether the defendants' actions were objective regardless of their underlying motivation or intent. *Montoute*, 114 F.3d at 183.

As previously outlined, because this matter is before the Court on the defendants' motion for summary judgment, the Court is required to resolve all issues of material fact in favor of the plaintiff and then answer the legal question of whether the defendants are entitled to qualified immunity under that version of the facts. *Brown*, 228 F. Supp. 2d at 1328. Pursuant to the plaintiff's version of the facts, the defendants did not have arguable probable cause to effectuate the arrest and detention.

The defendants' motion for summary judgment alleges that the defendants' probable cause

for the arrest was the plaintiff's being at the scene (where it is later learned no crime has been committed), leaving the scene, being the passenger in a car that fled from a traffic stop, then leaving the scene of the accident.[3] (Defendants' Motion for Summary Judgment Brief, Ct. Doc.#36, pp.11-12).

The defendant's reliance upon arguable probable cause is solely based upon the assertion that all the acts of the plaintiff that night gave rise to probable cause to arrest. The defendants protestations otherwise, the cause of action lies in these defendants actions AFTER the arrest of the plaintiff.[4] Gordon fabricated the arguable probable cause as to the plaintiff. This fabrication was done at the direction and insistence of Cook and Caulfield. Then in an effort to cover for their actions, the defendants knowing that no crime had been committed continued to hold and prosecute the plaintiff.

The Eleventh Circuit has long recognized that the falsifying of evidence is a violation of Constitutionally protected rights giving rise to liability under §1983. *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir.1997), citing, *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977).

---

[3] It their Brief in support the defendants make notice of the allegation that in the crashed car a handgun, ski mask and flashlight were discovered. However, the defendants fail to point out that the plaintiff was not the owner of the car, the items were in the trunk, the plaintiff was a passenger, none of the other occupants (not bitten by police dogs) were arrested and, most importantly, the plaintiff was charged with burglary not armed robbery.

[4] The defendants solely rely upon facts and circumstances related to the arguable probable cause issue occurring prior to the arrest. The plaintiff has always contended that the actions of the defendants after the arrest caused the violations. In fact, the plaintiff was so bold as to state in his Complaint, "At all times material hereto it was clearly established in the law that falsifying facts to establish probable cause is patently unconstitutional. *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997)" (Complaint, ¶40, Ct.Doc. #1 ).

The objective evidence demonstrates that the defendants' conduct demonstrated a willful and deliberate violation of the constitutional rights of the plaintiff. The objective evidence shows officers that sought to cover-up misconduct. The defendant's fabricated a probable cause affidavit concerning the events of March 30, 2005, failing to disclose the following: (1) they had no evidence that no crime had been committed; (2) that at no time did Gordon believe that the plaintiff had entered or exited Arnaud's Quality Meats, *inter alia*, it took Gordon three tries to get his story straight with much prodding from Cook and Caulfield; and, (3) in light of events regarding a recent allegedly unlawful dog bite incident, that the defendants wished to protect themselves from jeopardy stemming from the dog bite inflicted upon the plaintiff. The objective evidence demonstrates that the defendant's probable cause affidavit consisted of lies and deliberate omissions concerning material facts and circumstances within the defendants' knowledge.

  Based upon said evidence, no reasonable officer with the defendants' knowledge would have determined that probable cause or even reasonable suspicion existed in arresting and continuing to prosecute and detain the plaintiff. Clearly, the defendant's probable cause fails to disclose their abuse of authority in fabricating facts. In fact, it is objectively clear that Gordon's reasonable suspicions were not based upon the objective facts and circumstances observed by him. Gordon fabricated facts to bolster his arguable probable cause. The plaintiff's evidence demonstrates conduct by these three defendants that they consciously and deliberately covered up material information and deliberately ignored the totality of the circumstances surrounding the stop and arrest of the plaintiff in order to falsely create probable cause.

  The objective evidence demonstrates that they did not act as reasonable officers under the circumstances. Instead, the evidence demonstrates that they abused their lawful authority by: (1)

deliberately ignoring and misrepresenting the facts; (2) failing to do any reasonable investigation and knowingly relying on untrustworthy information; and (3) fabricating the probable cause affidavit in an attempt to cover-up a concern that the arrest was unwarranted thereby leading to some perceived liability for the injury caused by the dog bite.

Based upon the evidence presented, it cannot be concluded as a matter of law that probable cause existed to arrest, prosecute or detain the plaintiff. The plaintiff presents objective evidence that at the time of the stop and subsequent arrest, he had violated no laws and he did not burglarize Arnaud's Quality Meats. The plaintiff does demonstrate by clear and objective evidence that these defendants knowingly violated the law, thereby precluding the availability of the qualified immunity defense to them.

As a final note, immunity can be defeated even under state statutory law by a showing that the agent acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken impression of the law. *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000). Here there is more than enough evidence that the defendants acted willfully, maliciously, and in bad faith. They would not be entitled to peace officer immunity under state statute, much less qualified immunity under federal law.

The facts fit squarely within the definitions. An arrest without probable cause clearly violates a plaintiff's Fourth Amendment rights.

**D. Abuse of Process, Malicious Prosecution, False Imprisonment.**

Under Alabama law, false arrest and false imprisonment are essentially the same tort. Hare & Hare, *Principal Alabama Actions in Tort: Part II*, 22 Ala.L.Rev. 361, 397 (1970). They are

sometimes pled as "false arrest/false imprisonment." See, *e.g.*, *Franklin v. City of Huntsville*, 670 So.2d 848 (Ala. 1995).

False imprisonment is a statutory tort in Alabama; it consists of "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code, § 6-5-170. A wrongful or false arrest will support a claim for false imprisonment. *Upshaw v. McArdle*, 650 So.2d 875, 878 (Ala.1994).

The facts fit neatly; these defendants are liable for false arrest and false imprisonment.

Malicious prosecution is a state tort that is redressable under both state law and under 42 USC § 1983.

The elements of a malicious prosecution claim are: 1) a judicial proceeding initiated by the defendant; 2) the lack of probable cause; 3) malice on the part of the defendant; 4) termination of the proceeding in favor of the plaintiff; and 5) damage to the plaintiff as a result. *Tuscaloosa County v. Teaster*, 199 WL 13544, * 2 (Ala.Civ.App. 1999), citing *Eubanks v. Hall*, 628 So.2d 773 (Ala.Civ.App. 1993). Under these circumstances, probable cause has been defined as "[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offence charged." *Id.* citing *Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala. 1988). In actions arising out of prior criminal prosecutions, probable cause is defined as such a state of facts in the mind of a prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person is guilty of the crime charged. *Rhyne v. H & B Motors*, 505 So.2d 307, 310 (Ala. 1987). For a malicious prosecution derived from a criminal case, malicious or evil intent may be implied from circumstances in which a prosecution was begun for any purpose other than a bona fide

purpose to bring an accused to punishment as a violator of criminal law. *National Sec. Fire & Cas. Co. v. Bowen*, 447 So.2d 133, 140 (Ala. 1983). The element of malice may be inferred from a lack of probable cause. *Kitchens v. Wynn-Dixie Montgomery, Inc.*, 456 So.2d 45 (Ala. 1984). If material facts from which the inference of probable cause may be drawn are in dispute, the issue is a jury question. *Partridge v. Sawyer*, 383 So.2d 184 (Ala.Civ.App. 1980).

Malice, as the word is used in connection with this tort, does not mean "ill will" or "hatred." Malice may be defined as an intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the other party or under such circumstances that the law will imply an evil intent. *Empiregas, Inc. v. Feely*, 524 So.2d 626, 628. The element of malice may be inferred from the lack of probable cause; in fact, a rebuttable factual presumption of malice will arise from a lack of probable cause. *AAA Emp. Inc. v. Weed*, 457 So.2d 428 (Ala.Civ.App. 1884).

Here, however, there is another fact by which malice can be inferred – the policy of arresting the plaintiff simply because he was injured by a K-9 unit:

"We need this warrant, you know, to justify this bite."

(Pelham depo.,69:3-4).

Caulfield later demanded, "...charge the one that's bitten with burglary." (Pelham depo. 70:21-22).

In other words, the decision to charge the plaintiff with a crime was motivated – in whole or in part – by something other than probable cause to believe he had committed a crime. Such action can only qualify as malice.

## CONCLUSION

WHEREFORE, the premises considered, the plaintiff submits that he has adequately

addressed the defendants' motions for summary judgment by producing substantial evidence as to each and every material element of his claims as against all defendants, showing that there is a genuine issue of material fact as to every element. As noted above, the defendants are not entitled to qualified immunity or state-officer immunity. The plaintiff asserts that these showings, together with the evidence submitted contemporaneously herewith, preclude summary judgment as a matter of law as to all claims. The plaintiff expressly abandons all claims pursuant to 42 U.S.C. §1985 and §1986.

The plaintiff prays that the Court will overrule and deny the defendants' dispositive motions.

RESPECTFULLY submitted this the _22nd__ day of August, 2006.

> s/ANDY NELMS
> K. ANDERSON NELMS (NEL022)
> P.O. Box 5059
> Montgomery, AL 36103
> Phone: (334) 263-7733
> Fax: (334) 832-4390
> andynelms@jaylewislaw.com
> ASB-6972-E63K

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing to counsel of record listed below by filing the same with the Clerk of the Court via CM/ECF which will send a copy to the following on this the __11th__ day of August, 2006.

Christopher Whitehead
Lewis Gillis
Ramadanah Maryum Salaam
P.O. Drawer 5058
Montgomery, AL 361035058

Kim O. Fehl

City of Montgomery
P.O. Box 1111
Montgomery, AL 36101-1111

                              /s/ Andy Nelms
                              Andy Nelms
                              Attorney for Plaintiff
                              LAW OFFICES OF JAY LEWIS, LLC
                              P.O. Box 5059
                              Montgomery, Alabama, 36104
                              334-263-7733 (voice)
                              334-263-7733 (fax)
                              AndyNelms@jaylewislaw.com
                              ASB-6972-E63K