**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| CHAD HOGAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No:. 2:05CV687** |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MONTGOMERY, et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS COOK, CAULFIELD, AND GORDON'S REPLY TO PLAINTIFF'S**
**RESPONSE TO THEIR MOTION FOR SUMMARY JUDGMENT**

**COME NOW** Defendants Lieutenant Ronald Cook ("Cook"), Lieutenant William Caulfield ("Caulfield") and Canine Officer M.D. Gordon ("Gordon"), and hereby offer the following reply to the Plaintiff's response to their motion for summary judgment.

**PROCEDURAL HISTORY**

The Plaintiff originally filed a litany of claims against not only Defendants Cook, Caulfield, and Gordon; but also against Chief Art Baylor, Major J.C. West, Anthony Arnaud, and the City of Montgomery. The Plaintiff voluntarily dismissed Anthony Arnaud as a defendant shortly before the dispositive motion deadline. It further appears that the Plaintiff has abandoned his claims against Baylor, West, and the City of Montgomery, as he has failed to even offer a response to the motion for summary judgment submitted by these defendants.

As to Defendants Cook, Caulfield, and Gordon, the Plaintiff asserted both common law and § 1983 claims for abuse of process, malicious prosecution, and false imprisonment. Additionally, the Plaintiff asserted a § 1985 conspiracy claim against Cook, Caulfield, and Gordon; and § 1986

1

claim against Cook and Caulfield for failure to prevent violations.   In his response to the motion for summary judgment, the Plaintiff specifically abandoned his claims asserted under § 1985 and 1986. Accordingly, the only remaining claims against Defendants Cook, Caulfield, and Gordon are the common law and § 1983 claims for abuse of process, malicious prosecution, and false arrest.

### **INTRODUCTION**

In their motion for summary judgment, Defendants Cook, Caulfield, and Gordon repeatedly assert that the arrest and prosecution of Hogan was based upon arguable probable cause as a matter of law, and that all of the Plaintiff's claims are therefore precluded.  Specifically, the Defendants noted that  Hogan was in the immediate vicinity of a triggered burglar alarm at midnight; he fled the scene in a car and later on foot after a police officer made a lawful and reasonable attempt to stop and question him; there was evidence on the scene that entry had been made through the window; and a gun, ski mask, and flashlight were subsequently found in the car.  In response, Hogan **actually admits** that he "does not dispute that probable cause existed on some levels <u>throughout</u> the course of events transpiring on the night of March 30, 2005."  (Hogan SJ Response, p. 9)(emphasis added).  If Hogan admits that probable cause existed throughout the course of events, then none of his claims can possibly survive.

To cloud the issue, Hogan attempts to convince the Court that a violation to his rights occurred because the Defendants later had "actual knowledge that a crime had not been committed." and still continued to hold and prosecute Hogan. (Hogan SJ Response, p. 9).  Specifically, Hogan notes that the store owner could not find anything missing from the store, and that some false alarms had been triggered at the store earlier in the evening.  Hogan also claims that there were allegedly no "wet footprints" within the store despite that it had been raining that evening.  Apparently,  Hogan

would have this Court believe that these facts alone completely wipe out the litany of evidence that supported the inference that Hogan was guilty of burglary.  This is preposterous.  A person commits the crime of burglary if  he knowingly enters a building with the intent to commit a crime therein. See Ala. Code § 13A-7-7 (1975).   The law does not require that anything has to be taken and/or missing from the building.  Accordingly, it does not matter that the owner could not find anything missing.  Furthermore, the fact that a false alarm had been triggered at the business earlier that evening does not mean that each and every subsequent alarm is also false.  Finally, Hogan notes that there were no "wet footprints" on the floor despite the fact that it was raining.  Hogan conveniently fails to address the fact that Officer C.H. Forbus, who was the first to arrive on the scene, has offered unrebutted testimony that a flower pot was knocked from the windowsill inside on the floor; that items on the windowsill appeared to have been pushed to the side to allow entry; and that there was water inside on the floor.   Accordingly, Hogan's claim that the Cook, Caulfield, and Gordon had "actual knowledge" that a crime had not been committed is wholly unfounded.

The Defendants would also like to address a few additional concerns with the Court.  First of all, Hogan repeatedly states in his response that Hogan was charged with burglary to justify the fact that he was bitten by a dog.  This theory is wholly unsupported.  Hogan initially declared in his Complaint that Gordon's dog was the one that bit Hogan, and that Gordon therefore fabricated statements  to justify his dog biting Hogan.  (Complaint, ¶¶ 14, 22).   Hogan did not discover until the deposition of Gordon that it was not even Gordon's dog that bit Hogan. (Gordon Depo., pp. 50-51).  Furthermore, Hogan admits in his summary judgment response that he "does not even make claim that the dog bite he received was an act of excessive force." (Hogan SJ Response, p. 9).  **It is nonsensical for Hogan to claim that the Defendants fabricated evidence to justify a dog bite when Hogan admits that the bite was already justified**.

Finally, the Defendants would like to direct the Court's attention to the fact that Kirk Pelham ("Pelham") was not a witness to any of the material facts in this case. Pelham claims that Gordon allegedly fabricated statements about what he witnessed. However, Pelham was not at Arnaud's Quality Meats when Gordon responded to the alarm. Pelham's allegation that Gordon drafted additional statements is easily explained as a problem of articulation, not fabrication. Police officers, as well as attorneys, routinely read over their initial writings and redraft them with additional detail. This does not mean that the subsequent writings contain "fabrications," and it not a reasonable inference to suggest otherwise. Pelham even acknowledged that it was common for police officers to add further detail to previous statements and affidavits for the purely innocent reason of articulation. (Pelham Depo., pp. 117-119).

It should also be noted that Pelham did not arrive on the scene until after several patrol officers arrived, and after the building had been cleared by another K-9 unit. (Pelham Depo., pp. 45-46). Accordingly, Pelham cannot possibly testify about the position of the appearance of the items on the windowsill or the flower pot that was knocked to the floor inside the building. The simple fact is that Pelham decided that night, before he even got to the scene, that he did not believe a burglary had been committed. In fact, Pelham testified as follows regarding his thoughts immediately upon hearing Gordon report to dispatch that Hogan's vehicle had fled the scene:

> A: ...And I knew then **before I got to the business**, based on what he saw, we were either going to have to get a confession out of Mr. Hogan or his friends or some kind of property missing from the business. Or, you know, maybe an indentifiable witness.

(Pelham Depo., p. 55)(emphasis added). Pelham was not aware at that point that Hogan would, shortly thereafter, jump out of the wrecked get away vehicle and flee on foot. Pelham was also not aware at this point that a flower pot had been knocked off the window and on the floor inside the building, and that other items appeared to have been pushed to the side of the windowsill to allow

entry into the building.    Furthermore, Pelham was not aware at that point that a ski mask, a

flashlight, and a handgun was found inside the car.[1]   Simply stated, Pelham made up his mind before

he even knew the facts. Despite being faced with evidence that his opinion was wrong, Pelham

refused to alter his opinion.

Hogan further notes in his response that Pelham is not named as a defendant in this case

because the charges against Hogan were dropped partly due to Pelham's efforts. (Hogan SJ

Response, p. 9, fn 2).   Once again, Hogan makes an unsubstantiated claim.   Hogan's charges were

presented to the grand jury by the Montgomery County District Attorney's Office, and the case was

no-billed.   There is no evidence that Pelham testified before the grand jury, or that Pelham in any

way influenced the actions of the District Attorney's office.   Furthermore, it would be more accurate

to state that Pelham was not named as a defendant in this case because doing so would create an

impermissible conflict of interest on the part of Hogan's current counsel.    As noted in the

Defendants' motion for summary judgment, Pelham was admittedly represented initially by Hogan's

current counsel "for a considerable time" in relation to this same matter.   (Exh. 7, Letter from

Plaintiff's Counsel).   Accordingly, Hogan's counsel would be prohibited by Rule 1.7 of the Alabama

Rules of Professional Conduct from participating in this case if Pelham were named as a defendant.

## **ARGUMENT**

### I.    **THE PLAINTIFF'S COMMON LAW AND § 1983 CLAIMS FOR ABUSE OF PROCESS ARE DUE TO BE DISMISSED.**

The Defendants noted in their motion that Hogan's common law and § 1983 claims for abuse

of process are due to be dismissed because Hogan could not cite any activity on the part of the

---

[1]Hogan makes an unsubstantiated claim that these items were found in the trunk of the car in a footnote on p. 11 of his response.   There is no evidence that these items were found in the trunk.   To the contrary, the daily patrol summary submitted as part of the case file specifically notes that these items were found "inside the vehicle". (Exh. 10, Daily Patrol Summary, p. 3).

Defendants that was taken **after** the process was issued against Hogan.  Specifically, the Defendants noted that in *Shoney's, Inc.  v. Barnett*, 773 So.2d 1015 (Ala.Civ. App. 1999), the court held that Abuse of Process concerns the wrongful <u>use</u> of process <u>after</u> the process has been issued, whereas malicious prosecution is concerned with the wrongful issuance of process itself.  *Shoney's* at 1024.  Hogan still fails to cite any activity on the part of these Defendants that was taken after the process was issued against him.   The Defendants further noted that Hogan must additionally cite a constitutional deprivation that he suffered in order to support a § 1983 claim for abuse of process, which Hogan still fails to cite.   In fact, Hogan appears to have abandoned his abuse of process claims, as he fails to make any arguments in support of his abuse of process claims in his response.  Accordingly, Hogan's common law and § 1983 claims for abuse of process are due to be dismissed.

## II.    THE PLAINTIFF'S § 1983 AND COMMON LAW CLAIMS FOR MALICIOUS PROSECUTION ARE DUE TO BE DISMISSED.

The Defendants noted in their initial motion for summary judgment that Hogan's § 1983 and common law malicious prosecution claims were due to be dismissed based upon the fact that arguable probable existed to arrest and prosecute Hogan as a matter of law.   In response, Hogan cites *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) which held that the fabrication of evidence can constitute a constitutional deprivation.   Hogan alleges that facts were added to Gordon's statements that Gordon did not actually witness, and that evidence was therefore fabricated against Hogan.   As argued above, Hogan cannot establish that Gordon fabricated anything in his statement, as Pelham was not present to witness what Gordon saw.   Hogan argues that Gordon redrafted his statement with additional facts, but it is simply not a reasonable inference from this evidence that Gordon fabricated evidence simply because he redrafted his statement.   When considering a motion for summary judgment, "the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference."  *See Heupel v. Trans Union LLC,* 193 F.Supp.2d

1234, 1238 (N.D.Ala. 2002), citing *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

Furthermore, the Defendants cited the case of *Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989), a Sixth Circuit case which noted that a malicious prosecution claim could not stand unless the plaintiff could show that the remaining content of a statement or affidavit, absent the alleged fabrication, failed to establish probable cause. Specifically, the Defendants noted that even if this Court sets the information regarding seeing Hogan outside next to the window to the side, the remaining contents of Gordon's final statement still establish arguable probable cause as a matter of law. Hogan fails to specifically address *Hill* in his response. Instead, Hogan simply states that "Gordon fabricated facts to <u>bolster</u> his arguable probable cause." (Hogan SJ Response, p. 12)(emphasis added). Accordingly, Hogan admits that arguable probable cause was present, and the alleged fabrications were only used to "bolster" the arguable probable cause. Because Hogan fails to address *Hill*, and because Hogan admits that the alleged fabrications were only used to bolster the arguable probable cause, his claims are due to be dismissed.

The Defendants further noted in their motion for summary judgment that the Eleventh Circuit specifically held in *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) that a claim for malicious prosecution under § 1983 cannot be maintained under a "continuing seizure" theory. Hogan admits in ¶ 48 of the Complaint that his claim for malicious prosecution under § 1983 is based upon a "continuing seizure" theory on the basis that he was out on bond following his release from jail. Hogan acknowledges in ¶ 49 of the Complaint that *Kingsland* precludes his claim, but concludes by stating that the assertion of his § 1983 claim for malicious prosecution is "intended to challenge Eleventh Circuit precedent." Hogan fails to even address the preclusive effect of *Kingsland* in his summary judgment response. Accordingly, his § 1983 and common law claims for malicious prosecution are due to be dismissed.

### III. THE PLAINTIFF'S § 1983 AND COMMON LAW CLAIMS FOR FALSE ARREST ARE DUE TO BE DISMISSED.

The Defendants argued in their motion for summary judgment that Hogan's § 1983 and common law claims for false arrest are due to be denied because arguable probable cause existed as a matter of law.   In response, Hogan sets forth the same allegations of evidence fabrication that he does in response to his claims of malicious prosecution.  The Defendants will refrain from reciting the same litany of reasons that Hogan's allegations of evidence fabrication do not create a genuine issue of material fact.   It is sufficient to state at this point that Hogan has presented no reasonable evidence that the Defendants fabricated evidence against him, and that arguable probable cause existed as a matter of law even when setting Hogan's alleged "evidence fabrications" off to the side. Accordingly, his § 1983 and common law claims for false arrest are due to be dismissed.

### <u>CONCLUSION</u>

Defendants respectfully request this Honorable Court to dismiss Plaintiff's Complaint with prejudice in its entirety.

Respectfully submitted this 29th day of August, 2006.

Respectfully Submitted,


/s/ Christopher K. Whitehead
**H. LEWIS GILLIS**
**CHRISTOPHER K. WHITEHEAD**
**RAMADANAH M. SALAAM**

**OF COUNSEL:**
**THOMAS, MEANS, GILLIS & SEAY, P.C.**
3121 Zelda Court (36106)
P.O. Box 5058
Montgomery, Alabama 36103
(334) 270-1033 (phone)
(334) 260-9396 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following through this Court's electronic filing/notification system and United States mail on this the 29th day of August, 2006.

Jay Lewis, Esq.
Keith Anderson Nelms, Esq.
**Law Offices of Jay Lewis, LLC**
P.O. Box 5059
Montgomery, AL 36103-5059
334-263-7733
Fax: 334-832-4390

James G. Bodin, Jr., Esq.
**McPhillips, Shinbaum L.L.P.**
P.O. Box 64
Montgomery, AL 36101-0064
(334) 262-1911
(334) 263-2321

Walter Byars, Esq.
Kimberly O. Fehl, Esq.
**Montgomery City Attorney's Office**
P.O. Box 1111
Montgomery, AL 36101-1111
334-241-2050
Fax: 334-241-2310

/s/ Christopher K. Whitehead
**OF COUNSEL**