IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHAD HOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cv-687-WKW |
| | ) | (WO) |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Chad Hogan ("Hogan") brings this civil rights action against Defendants Lieutenant Ronald Cook ("Cook"), Lieutenant William Caulfield ("Caulfield"), and Officer Marquedic Dante Gordon ("Gordon") alleging violations of his constitutional rights secured by the Fourth Amendment. (Doc. # 1, Compl.)  Hogan brings these constitutional claims under 42 U.S.C. § 1983 ("Section 1983") alleging false arrest, false imprisonment, and abuse of process or malicious prosecution.  Hogan also brings pendent state law claims of malicious prosecution or abuse of process against Defendants.

This cause is before the court on the Defendants' motion for summary judgment filed on July 14, 2006.  (Doc. # 35.)  Plaintiff filed a response in opposition to the motion on August 22, 2006 (Doc. # 44), and Defendants filed a reply thereto on August 29, 2006 (Doc. # 45).  After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for summary judgment is due to be GRANTED in relation to Plaintiff's federal claims and Plaintiff's state law claims are due to be DISMISSED WITHOUT PREJUDICE.

## I. FACTS[1] AND PROCEDURAL HISTORY

On March 30, 2005, around 10:30 p.m., Hogan met with three male associates[2] to shoot pool. After shooting pool for about an hour at the Break Room Pool Hall in Montgomery, Alabama, the foursome exited the pool hall and climbed into their vehicle. Hogan was a passenger in the vehicle. Due to heavy rain, the driver of the vehicle pulled into a nearby parking lot, located in close proximity to Arnaud's Quality Meats ("Arnaud's"), to wait for the rain to subside. During this time, the foursome drank liquor and Hogan's three associates smoked marijuana.[3] According to Hogan, he and his associates never exited the vehicle.[4]

Around 11:58 p.m., the security alarm sounded at Arnaud's.[5] The alarm triggered a call to the City of Montgomery Police Department ("MPD"). Defendant Gordon, a canine officer with the MPD who was on patrol in the area, responded to the call. Pursuant to normal protocol, Gordon turned his vehicle lights off and approached the parking lot of Arnaud's. As he entered into the parking lot, Gordon noticed the vehicle containing the foursome which was parked approximately twenty to thirty yards from Arnaud's. Gordon next witnessed the vehicle leave the parking lot.[6]

---

[1] This recitation of "facts" is based upon materials presented by the parties, viewed in the light most favorable to Plaintiff.

[2] According to Hogan, these associates were Chris McBride ("McBride"), Courtney Smith ("Smith"), and Mario (last name unknown).

[3] Hogan did not participate in the marijuana smoking. (Hogan Dep. 72.)

[4] (Hogan Dep. 36.)

[5] The alarm was triggered by a motion sensor inside of Arnaud's. According to Anthony Arnaud, the owner of Arnaud's, the alarm had falsely activated approximately an hour earlier that night. (Arnaud Dep. 18-19.)

[6] According to Gordon, he observed Hogan walk away from one of Arnaud's windows toward the parked vehicle. (Gordon Dep. 24.) Gordon also observed that the window was open. (*Id*.) Hogan then ran to the vehicle and entered the passenger side of the vehicle. (*Id*. at 30.) In contrast, Hogan testified that he and his associates never left the vehicle and did not enter the store. (Hogan Dep. 36 & 51.)

Gordon followed the vehicle into a trailer park which was adjacent to the parking lot and immediately behind Arnaud's. Gordon initiated a stop by flashing his emergency lights. Initially, the vehicle stopped. When Gordon exited his vehicle, which was an unmarked vehicle, and began walking toward the suspect vehicle, the suspect vehicle fled. Gordon immediately returned to his vehicle and a chase ensued.

The suspect vehicle led Gordon on a high speed chase through a residential area for approximately five to ten minutes. Gordon radioed dispatch and requested assistance from additional units. The chase ended when the suspect vehicle crashed into a privacy fence in a citizen's backyard. After the crash, the occupants of the suspect vehicle immediately fled the crash scene.

Gordon and his canine partner, Osko, exited their vehicle and pursued Hogan and his associates. Another canine officer of the MPD, Corporal Greg Mora ("Mora"), arrived on the scene and tracked down Hogan. Hogan was arrested by Mora and, during the arrest, was bitten by Mora's canine partner. Hogan was transported to MPD headquarters. Two of Hogan's associates, McBride and Smith, were also apprehended and taken to MPD headquarters for further questioning. Subsequently, an inventory search was performed on the suspect vehicle wherein a 9mm handgun, ski mask, and flashlight were discovered.[7]

Hogan was charged with third degree burglary in violation of Ala. Code § 13A-7-7 (1975). That same evening, the burglary warrant was prepared by Detective Kirk Pelham ("Pelham"), the case agent. Pelham was one of the officers who arrived at the scene to provide assistance. Arnaud's

---

[7] These items were discovered in the trunk of the vehicle. It is undisputed that Hogan did not own this vehicle and was not aware of the presence of these items.

owner, Anthony Arnaud ("Arnaud"), also arrived at the scene after receiving a call from his security company. According to Pelham, Arnaud claimed that he had left the window open due to the inoperable air conditioner in the store.[8] After examining the store, Arnaud informed Pelham that nothing was missing and the store was not damaged.[9] Arnaud further informed Pelham that he had left "some cash laying on the counter" and "it was still there."[10]

Pelham instructed Arnaud to secure the premises and Pelham escorted Arnaud to the MPD headquarters to press charges.[11] Thereafter, Pelham escorted Arnaud to the Warrant Clerk's office to secure the warrant against Hogan.[12] Pelham then took the warrant, executed it, and transported Hogan to Montgomery County Jail.[13] In June 2005, Hogan's case was presented to the Montgomery County Grand Jury and was no-billed. (Doc. # 1, Compl., ¶ 26.)

---

[8] (Pelham Dep. 29.) However, Arnaud testified somewhat inconsistently that he did not leave the window open, but there was a possibility that he left the window open. (Arnaud Dep. 27.)

[9] According to Arnaud, three flower pots which were usually kept on the window sill were relocated to the floor. Because police officers were in the store prior to Arnaud's arrival, he opined that the officers must have entered the store through the window at issue and, in so doing, resettled the flower pots on the floor. (Arnaud Dep. 28.) Arnaud's testimony is consistent with Pelham's testimony. Pelham testified that Officer C.H. Forbus ("Forbus") and Officer Fike told him that they moved the flower pots to enter the store. (Pelham Dep. 25-46.) However, Defendants have submitted evidence which is contrary to this testimony. Defendants submitted the affidavit of Forbus, the first MPD officer to arrive on the scene after Gordon had been led away by the suspect vehicle. (Forbus Aff.) According to Forbus, he noticed that a flower pot had been knocked off the window sill and landed inside on the floor, three or four other items on the window sill appeared to have been pushed off to one side to allow entry into the store, and there was water inside on the store floor. (*Id*.)

[10] (Pelham Dep. 29.)

[11] (Pelham Dep. 31; Arnaud Dep. 30-33.)

[12] (Pelham Dep. 54.) Although Arnaud testified that he signed a warrant against Hogan (Arnaud Dep. 30-33), the evidence indicates that Arnaud signed a Complaint for third degree burglary against Hogan (*Id*., Ex. 5).

[13] Interestingly, Pelham now asserts that some police misconduct occurred in the procurement of the warrant. According to Pelham, Gordon fabricated his police memorandum, Caulfield stated that the burglary warrant was needed to justify Hogan's dog bite injury, and Arnaud was pressured into signing the burglary warrant. (Pelham Dep. 36-41, 51, 66-69, 92.). However, according to Arnaud, he was not pressured by the police to file a warrant. (Arnaud Dep. 38-39.) Moreover, Gordon disputes that he fabricated his police memorandum and asserts that he merely revised his statement to include additional facts. (Gordon Dep. 75-77.)

On July 27, 2005, Hogan filed the instant action naming Cook, Caulfield, Gordon, Arnaud, Major J.C. West ("West"), Montgomery Police Chief Art Baylor ("Baylor"), and the City of Montgomery as defendants. (Doc. # 1.) In the Complaint, Hogan alleges six counts. (*Id*.) In the first count, Hogan alleges a claim against all the defendants under Section 1983[14] for false arrest and false imprisonment. (*Id* at 8.) In the second count, Hogan alleges a claim against Defendants Gordon, Caulfield, Cook, and Arnaud for abuse of process or malicious prosecution under Section 1983. (*Id*. at 9-10.) In the third count, Hogan alleges a state law claim of malicious prosecution or abuse of process against Defendants Gordon, Caulfield, Cook, and Arnaud. (*Id*. at 10-11.) In the fourth count, Hogan alleges a conspiracy claim under 42 U.S.C. § 1985 against Defendants Gordon, Caulfield, Cook, and Arnaud. (*Id*. at 11-12.) In the fifth count, Hogan alleges a claim under 42 U.S.C. § 1986 against Defendants Caulfield, Cook, West, and Baylor. (*Id*. at 12.) Finally, in the sixth count, Hogan alleges a claim for municipal liability against Defendant City of Montgomery. (*Id*. at 12.) Hogan requests a jury trial and seeks the following relief: declaratory relief, attorney fees, court costs, punitive damages and compensatory damages. (*Id.*)

On July 14, 2006, Defendant Arnaud was dismissed from this action (Doc. # 34), and on September 7, 2006, Defendants West, Baylor, and the City of Montgomery were dismissed (Doc. # 50). Thus, the only defendants remaining are Defendants Cook, Caulfield and Gordon (collectively "Defendants").

## II. JURISDICTION AND VENUE

The parties have not disputed that this court has subject matter jurisdiction over this case

---

[14] Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.

pursuant to 28 U.S.C. §§ 1331, 1343(4) and 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both personal jurisdiction and venue.

### III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

### IV. DISCUSSION

*A.    Abandoned Claims*

At the outset, the court notes that Plaintiff has expressly abandoned some of his claims. In his response to the motion for summary judgment, Plaintiff explicitly abandoned his claims under 42 U.S.C. §§ 1985 and 1986 which were alleged in counts four and five of the Complaint. (Doc. # 44 at 16.) Accordingly, the motion for summary judgment is due to be granted on these claims.

Moreover, Plaintiff has abandoned his claim alleged in count two of the Complaint for abuse of process under Section 1983 because his response to the motion for summary judgment failed to address this claim. See *Walton ex rel. R.W. v. Montgomery County Bd. of Educ.,* 2005 WL 1217256, *4 (M.D. Ala. May 20, 2005) (Albritton, J.) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995)). "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp.,* 43 F.3d at 599. Accordingly, as Plaintiff does not rely upon this claim in summary judgment, it is deemed abandoned. Defendants are therefore entitled to summary judgment on Plaintiff's Section 1983 abuse of process claim.

The court now turns to address Plaintiff's preserved claims.

*B.    Fourth Amendment Claims*

In moving for summary judgment, Defendants argue that they are entitled to qualified immunity on Plaintiff's Fourth Amendment claims of false arrest and false imprisonment because

they had arguable probable cause to arrest and detain him. Defendants also argue that Plaintiff's Fourth Amendment claim of malicious prosecution is due to be dismissed because Eleventh Circuit precedent precludes this claim. Finally, Defendants argue that Plaintiff's state law claims are due to be dismissed.

The court reviews each argument in turn.

*1.     General Principles of Qualified Immunity*

"Qualified immunity shields a Section 1983 defendant from liability for harms arising from discretionary acts,[15] as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir. 2000). To be entitled to qualified immunity, the defendant must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) "Once the defendant[ ] establish[es] that [he was] acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Id*.

The United States Supreme Court has established a two-part test to evaluate whether an official is entitled to qualified immunity. "First, as a threshold inquiry, [the court] must address whether the facts presented, taken in a light most favorable to the non-moving party, establish a constitutional violation." *Bostic*, 458 F.3d at 1303. If the court answers this question in the affirmative, then the court must ask whether the right was "clearly established." *See id*.[16] Hence,

---

[15] Here, it is undisputed that Defendants were within the scope of their discretionary authority at all relevant times.

[16] When case law is needed, only cases from the Supreme Court, Eleventh Circuit or the highest court of the pertinent state clearly establish the law in this Circuit for qualified immunity analysis. *Marsh v. Butler County,* 268 F.3d 1014, 1033 n.10 (11th Cir. 2001) (en banc).

the court must analyze whether Defendants' conduct violated Plaintiff's constitutional rights with respect to each cause of action.

    2.    *Fourth Amendment Claims of False Arrest and False Imprisonment*

Plaintiff claims that Defendants violated his constitutional rights under the Fourth Amendment by unlawfully arresting and detaining him without probable cause. The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from a warrantless arrest without probable cause. *See Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990)).[17] "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1332 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975)) (internal marks and citations omitted). However, for purposes of qualified immunity, a constitutional violation does not occur unless the officer made an arrest without "arguable" probable cause. *See Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). Arguable probable cause, not actual probable cause, governs the qualified immunity inquiry. *Id.* The test for determining arguable probable cause is whether an objectively reasonable officer in the same circumstances and possessing the same knowledge as Defendants could have believed probable cause existed to arrest Plaintiff. *See Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998).

Here, Defendants are entitled to qualified immunity on Plaintiff's false arrest claim. Viewing

---

[17] A false arrest violates the proscriptions of the Fourth Amendment. *See Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment") (internal citation omitted). Likewise, unlawful detention is purely a Fourth Amendment claim. *See Reid v. Georgia*, 448 U.S. 438, 440 (1980) ("[A]ny curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.").

the information known to Defendants at the time, arguable probable cause existed to arrest Hogan for third degree burglary.[18]  Under Alabama law, "a person commits the crime of burglary in the third degree[19] if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." Ala. Code § 13A-7-7 (1975). The following facts are undisputed: Defendant Gordon was responding to a burglary alarm call triggered by the security system at Arnaud's; upon his arrival at the location, Defendant Gordon observed the suspect vehicle in the parking lot adjacent to Arnaud's; Defendant Gordon also noticed the open window at Arnaud's; Defendant Gordon initiated a stop of the suspect vehicle and a chase ensued; once the suspect vehicle crashed into a privacy fence and ceased moving, all of the occupants in the suspect vehicle fled; Plaintiff was apprehended as one of the occupants in the vehicle; and a search of the vehicle revealed a 9mm handgun, ski mask, and flashlight.  Under these circumstances and based on the facts known to Defendants at the time Plaintiff was arrested, a reasonable officer could have believed that arguable probable cause existed to arrest Plaintiff for third degree burglary.[20]  Accordingly, the court finds that Defendants are entitled to receive qualified immunity with respect to Plaintiff's claim for false arrest.

Moreover, because Plaintiff's false imprisonment claim is predicated on his false arrest claim, his false imprisonment claim also fails. "A detention on the basis of a false arrest presents

---

[18] In deciding whether arguable probable cause existed, the court evaluates the information known to Defendants at the time of Plaintiff's conduct, not the facts known to them later. *Jones*, 174 F.3d at 1283 n.4.

[19] Third degree burglary is a Class C felony. Ala. Code § 13A-7-7(b) (1975).

[20] The court pretermits discussion of Plaintiff's argument that Defendant Gordon falsified facts in his police memorandum because the court relies upon his deposition testimony, not the facts asserted in the memorandum, in ruling upon summary judgment. Moreover, Defendant Gordon's memorandum was completed *after* Plaintiff was arrested, thus the court finds the memorandum irrelevant to its determination of arguable probable cause for Plaintiff's warrantless arrest. *See* Ala. Code § 15-10-3 (1975) (authorizing an officer to arrest a person without a warrant when the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed).

a viable Section 1983 action." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). "A Section 1983 false imprisonment claim must meet the elements of common law false imprisonment and establish that the imprisonment worked a violation of the Fourteenth Amendment due process rights." *West v. Tillman*, 2006 WL 2052520, *7 (S.D. Ala. 2006) (internal quotations and citation omitted). Under Alabama law, false imprisonment "consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." *Ala. Code* § 6-5-170 (1975). *See Big B, Inc. v. Cottingham,* 634 So. 2d 999, 1001 (Ala. 1993).

Defendants argue that Plaintiff's imprisonment was lawful because they had probable cause to believe Plaintiff had committed the offense of third degree burglary. The absence of probable cause is a prerequisite of a false imprisonment claim. *Ortega*, 85 F.3d at 1526 ("Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under Section 1983 for false imprisonment based on a detention pursuant to that arrest."). Because the court has already found that arguable probable cause existed to arrest Plaintiff without a warrant for third degree burglary, his claim for false imprisonment based upon that arrest fails. *See Colosimo v. City of Port Orange*, 2005 WL 1421294, *6 (M.D. Fla. 2005) ("[T]he existence of probable cause for [Plaintiff's] arrest necessarily bars his claims for false imprisonment and malicious prosecution."). Therefore, Defendants are entitled to qualified immunity on Plaintiff's false imprisonment claim.

      3.      *Fourth Amendment Claim of Malicious Prosecution*

Plaintiff also alleges a claim under Section 1983 for malicious prosecution in violation of his Fourth Amendment rights. The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under Section 1983." *Wood v. Kessler*, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a federal malicious prosecution claim

11

under Section 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). It is a two-part showing and to avoid summary judgment for Defendants on his claim, "[Plaintiff] bears the burden of proving that [he] was seized in relation to the prosecution, in violation of [his] constitutional rights." *Id.* at 1235.

In count two of the Complaint, Plaintiff concedes that *Kingsland* "rejects the notion that he may sue for malicious prosecution under a 'continuing seizure' theory by virtue of the fact that he was out on bond by the time the grand jury rejected the charges against him." (Doc. # 1, Compl., ¶ 49.) Plaintiff further asserts that "the Eleventh Circuit's analysis is incorrect" and maintains that his malicious prosecution claim "is not frivolous, but is intended to challenge the Eleventh Circuit precedent in this regard." (*Id.*)

In *Kingsland*, the Eleventh Circuit found that a "plaintiff's arrest cannot serve as the predicate deprivation of liberty" for a malicious prosecution claim "because it occurred prior to the time of arraignment . . . ." 382 F.3d at 1235. Consequently, the court finds that Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim because (1) this court is bound by the decisions of the Eleventh Circuit, (2) Plaintiff has conceded that his malicious prosecution claim fails in light of the Eleventh Circuit's decision in *Kingsland*, and (3) *Kingsland* has not been reversed.

Alternatively, Plaintiff has not shown that Defendants acted without arguable probable cause,

a required element of a Section 1983 malicious prosecution claim. *See Wood*, 323 F.3d at 882-83.[21]
Defendants are thus entitled to qualified immunity on Plaintiff's malicious prosecution claim.

C.    *State Law Claims*

As aforementioned, Plaintiff also brings state law claims of malicious prosecution or abuse of process against Defendants Gordon, Caulfield, and Cook. Because summary judgment is due to be granted on Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims and will dismiss them without prejudice. *See* 28 U.S.C. § 1367 (c)(3) (court may decline to exercise such supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999) (dismissal of state law claims pursuant to § 1367(c) is encouraged if federal claims dismissed prior to trial). Accordingly, the court finds that the state law claims remaining in this action are best resolved by the Alabama state courts.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

1.   The motion for summary judgment (Doc. # 35) is GRANTED in relation to Plaintiff's federal claims.

2.   Plaintiff's state law claims are hereby DISMISSED WITHOUT PREJUDICE.

3.   The Clerk of the Court is DIRECTED to remove the above-styled case from the November 6, 2006, trial docket.

---

[21] In *Wood*, the Eleventh Circuit noted that the elements of a Section 1983 malicious prosecution claim are :1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. 323 F.3d at 883-883.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 26th day of October, 2006.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE